JOHN L. MOULTON vs. TIMOTHY McOWEN.
TIMOTHY McOWEN vs. JOHN L. MOULTON.

In an action for negligence in the building of a cellar under the plaintiff's house by con-
tract, the measure of damages is the difference, expressed in money, between the value
of the work as actually done, and what would have been the value of the work which
should have been done; and in computing this difference the jury not only may allow
for the plaintiff's expenses in repairing defects in the work, but may also make allow-
ances against the defendant for defects irreparable or not reparable at reasonable expense.
A mechanic, who has worked for twenty-five years as a journeyman carpenter, may testify,
as an expert, to the injury caused to a house, which he was employed in building, by de-
fects in the construction of a cellar under it.
Payment for work done is not, of itself and without regard to the circumstances under which
it was made, conclusive evidence of a waiver of claims for defects in the work.

THE FIRST CASE was an action of tort by Moulton against
McOwen for negligence in building a cellar and cellar wall for
the plaintiff. Writ dated August 21, 1868.

The declaration was as follows : " And the plaintiff says that,
on December 28, 1867, he was the owner of a house-lot situate
on First Street in Lowell, and the defendant made a special ver-
bal contract with him to excavate and stone a cellar in said lot,
with a good and sufficient dry and mortar wall, to be two feet
thick, and with a trench wall one foot deep, the cellar to be seven
feet deep in the clear, the materials to be good and furnished by
the defendant, and all the work to be done in a strong and work-
manlike manner. And the plaintiff says that the defendant,
although he undertook to dig the cellar aforesaid, carelessly and
negligently neglected to dig it seven feet deep, but left it only
six and a half feet deep, and carelessly and negligently neg-
lected to put in the trench wall; and that the defendant, in
building the dry wall, did not do it of good material, nor in a
strong and workmanlike manner, nor did he build it two feet
wide, but wrongfully and negligently made it a narrow wall, not
over a foot and a half wide, so that said wall caved in and fell
down ; whereby, and by reason of all which, the plaintiff hath
been greatly damaged, and hath been put to great cost and ex-
pense in the repairing and rebuilding of said wall, and in the
furnishing of materials for the same, and hath been otherwise

greatly damnified by reason of the nonfulfilment of the defend-ant's contract aforesaid."

The defendant answered, denying "that he ever made the contract set out in the declaration, and each and every particu-lar of said contract;" and further as follows: "He admits that he built a mortar wall for the plaintiff, and he says the same was built according to the directions of the plaintiff, and was properly and strongly built, and in a workmanlike manner, and he is ignorant whether the same has caved in and fallen down, and if the plaintiff shall prove the same, then the defendant says that the same resulted from no fault of the defendant and from no want of the proper building of said wall; and he denies that the plaintiff has suffered any damage by reason of any fault of the defendant in said matter of building said wall; and he de-nies that he was careless and negligent in the building of said wall."

THE SECOND CASE was an action of contract by McOwen against Moulton for a balance of $69.20 alleged to be due on an account annexed for $259.20 for labor and materials ex-pended in the work concerning which damages were claimed in the first action. The answer alleged that McOwen did not do the work in a workmanlike manner, and that he had been paid all that his labor and materials were reasonably worth.

The cases were tried together, in the superior court, before *Rockwell*, J., who, after a verdict for McOwen in both actions allowed the following bill of exceptions:

" At the trial there was evidence tending to show that McOwen undertook, by oral contract, to put in a cellar for Moulton in a workmanlike manner, and undertook to make the cellar wall two feet thick, and of good material, seven feet high from the bottom of the cellar, with a trench wall of cobbles under it, two feet wide and one foot deep, extending below the bottom of the cellar. There was also evidence tending to show that McOwen in doing the work neglected to put in the trench wall, so that thereby Moulton was damaged and was put to considerable ex pense in constructing a drain in lieu of it; that the materials of the walls were defective, and that McOwen did not build

them in some places more than a foot or a foot and a half thick, by reason of which the walls under the front as well as under the back part of a wing of the house gave way, and fell down, causing that part of the house to settle about one and a half inches, part way of the length of the sill on one side; and that, when that part of the wall was repaired, the sill was raised about three quarters of an inch, and could not safely be raised more, because the raising of it quite to its former height would make cracks about the chimney and a pipe which went into the chimney."

" The judge instructed the jury as follows: If the contract called for stone good and sufficient in quality, and it was not good and sufficient, and the wall was worth less on that account, the deficiency in quality is an item of damages. If the contract required a wall (a dry wall and mortar wall) seven feet high, and it was not of that height, that defect is an item of damages, if the wall as left by the contractor was not as good as if it had been built seven feet high; and the same in relation to the width of the wall, if the contract was for two feet wide, and the wall worth less on account of being built of less width. If the contract prescribed that the cellar should be dug out seven feet deep, and it was dug and left at a less depth, and that defect made the cellar worth less than a seven feet cellar, that defect is an item of damages. If the contract called for a trench wall under the dry wall, and that trench wall was not put in, that defect in the performance is an item of damages. These are the items of damages. If any or all of these defects existed in the work as done by McOwen, and were supplied by Moulton, he may recover as damages his fair cost of supplying them. Possibly this cost of supplying them may not show the whole damages recoverable; because, if Moulton, after he took the work, chose to let a defect remain unsupplied, he may recover, in regard to that defect, a sum equal to the fair cost of supplying it; and that may be added to the other damages as above stated. But, as Moulton took the work when left by McOwen, and did work and found materials, himself, to supply or remedy the defects; if, finding one side of the building settled, say one

and a half inches, at the time of building up the defective wall he raised that side, say three quarters of an inch only, preferring so to leave it to running the risk of making cracks in the chimney and pipe, he cannot recover for that depression as an item of damages, it not being such a proximate damage as can be recovered for. Moulton not alleging that he has paid the full contract price, (stated on both sides to be $220,) the jury will ascertain from the evidence how much of that sum, if any, has been paid by him. They will ascertain the damages, if any, and their amount, upon the principles before stated; and they will also inquire if that amount of damages is equal to, or less or greater than the difference between the amount paid and the $220. If the damages, thus ascertained, are less than, or only equal to, that difference, the plaintiff Moulton cannot recover; but if they are greater, he may recover the sum by which they are greater, as damages in his action."

"In the case of *Moulton* v. *Mc Owen*, the jury returned a verdict for the defendant; and in the case of *Mc Owen* v. *Moulton* they found a verdict for the plaintiff, assessing damages at $77.18. To the foregoing rulings and instructions the said Moulton excepts."

*T. Wentworth & R. B. Caverly*, for Moulton.

*G. Stevens*, for McOwen.

AMES, J. The two cases between these parties were tried at the same time, and presented in such a manner that the same question arises in each. The matter which was relied upon as a defence in the case of *Mc Owen* v. *Moulton* is put forward as the ground of a substantive claim of damages in the case of *Moulton* v. *Mc Owen*. It is obvious, that, if this claim should prove to be well founded in law and in fact, the plaintiff in the last named action can avail himself of it, under the operation of the legal provisions for setting off judgments against each other in cross actions, quite as well as in any other way. It is unnecessary, therefore, to disturb the verdict in the first named case; and the exceptions are to be considered as applying exclusively to the last named of the two.

In that action, the plaintiff's claim is for damages growing

out of, and resulting directly from, the alleged imperfect and defective execution, on the part of the defendant, of a building contract; and the question is, as to the correctness of the rule of damages laid down at the trial. It was of course a question of fact whether the parties ever entered into the contract declared upon; and also whether, if there was such a contract, the defendant deviated from it in any material respect, and if so, whether such deviation was by the direction or consent of the plaintiff. If all these questions should be determined in favor of the plaintiff, then he would be entitled to recover in this action an amount equal to the difference in value between the work actually done by the defendant and the work which by the terms of the contract he ought to have done. The work was done upon the plaintiff's land, and made a part of the house which he built. It was of some benefit and use to him. He could not reject it, or refuse to receive it, as if it had been a strictly personal chattel. The cases are presented in such a shape that the defendant is permitted to charge, and has obtained a verdict for, such a sum of money as, with previous payments, amounts to the entire contract price. In order to protect the plaintiff's rights, he on his part should be allowed to charge such deficiency in the value of what he received, as compared with what by the contract he should have received, as he can show to have resulted from any unauthorized departure from the contract on the defendant's part. It would be a question for the jury how much in dollars and cents did the work done and materials actually furnished by the defendant fall short in value of the value of the work and materials which by the terms of the contract he should have furnished; and that difference or deficiency would ordinarily be the measure of the plaintiff's damages. *Hayward* v. *Leonard*, 7 Pick. 181. *Smith* v. *First Congregational Meeting-house*, 8 Pick. 178. *Snow* v. *Ware*, 13 Met. 42. *Reed* v. *Scituate*, 5 Allen, 120. *Thompson* v. *Purcell*, 10 Allen, 426. *Gleason* v. *Smith*, 9 Cush. 484. *Bassett* v. *Sanborn*, Ib. 58.

At the trial in the superior court, certain specific deficiencies in the quality of the materials and in the execution of the work,

and in the entire omission of some portions of the work con-
tracted for, were pointed out as items of damage to be consid-
ered and allowed for, if made out by the proof.  This was cor-
rect as far as it went; but the court then proceeded to qualify
this general instruction in a manner which had a tendency to
mislead the jury.  The amount expended in supplying defects
is far from being necessarily the measure or limit of the plain-
tiff's damages.  The defect may be of such a nature as not to
admit of being supplied by any reasonable expense.  A partial
repair may still leave the value quite short of the contract stand-
ard.  To take the case suggested by the presiding judge, the
owner may find one side of the building settled to such an ex-
tent that he may reasonably, and with good cause, believe that
he cannot bring it up to its proper level without cracking the
chimney, and rendering it unsafe.  It is difficult to see why in
that case he should not have some allowance for such a defect,
merely because it is substantially irreparable, or in what sense
it can be said to be " not such a proximate damage as can be
recovered for."

So far as we can judge from the bill of exceptions, the jury
were not distinctly instructed to allow the plaintiff for the defi-
ciency in value of the work done as compared with what by the
contract should have been done.  They may have supposed that
no allowance was to be made to him except for the actual cost
of supplying deficiencies, and that he could claim no allowance
for defects that proved irreparable.  In the case of *Moulton* v.
*McOwen*, therefore, the           *Exceptions are sustained.*

At the new trial of the first case, after this decision, before
*Brigham*, C. J., the jury returned a verdict for the plaintiff, and
the defendant alleged exceptions substantially as follows :

" The plaintiff claimed as elements of damage that the cellar
was not of the depth agreed upon; that there was no trench
drain under the dry wall of the cellar; that the dry wall was
not of the agreed thickness, was built of stone of a poor qual-
ity, and not built in a workmanlike manner, in consequence of
which it fell after the structure was put upon it, injuring the cis-

tern in the cellar, and causing the house to settle so that it could not be restored to a level, but still remains out of level; and that, in consequence of not putting in a trench drain, the plaintiff was obliged to put in other drains, and do other things, to make the cellar dry. Against the defendant's objection, the plaintiff was allowed to put in evidence of the cost of supplying particular defects, such as raising the building which had settled, repairing the cistern, putting drains into the cellar, and rebuilding the dry wall and mortar wall which had fallen; and also to offer evidence of the injury to the value and use of the structure, including the cellar and foundations, by reason of those irreparable injuries which arose from the negligence and carelessness of the defendant.

" Against the defendant's objection, the plaintiff was allowed to ask John Bagley, (who, to qualify himself, testified that his business had for twenty-five years been that of a journeyman carpenter for wages, under the direction and oversight of housebuilders and master workmen, never having himself built a house as a master workman, but who had worked on this building in its erection, and was so working when the wall fell,) ' what in his opinion was the amount in dollars and cents of the damage to the house above the foundation walls, as affecting its value and uses by reason of the settling of the house ;' to which he answered, ' from $250 to $300.'

" The defendant contended, and offered evidence to show, that the plaintiff had the oversight of building the cellar and dry wall, and agreed to the quality of the stone, and that the cellar and walls were constructed and built as he directed and under his oversight; that, when the dry wall was completed and before the mortar wall was put on, the structure, under the direction of the plaintiff, was erected upon the dry wall, resting upon blocks which rested directly upon the dry wall; that the plaintiff used jack screws upon the dry wall carelessly ; that the whole work, by request of the plaintiff, was done in the winter, when the ground was frozen and freezing; that, when the dry wall was completed, the plaintiff, with full knowledge of the character of the work in all respects, paid the defendant, on account

of the work then done, including the dry wall, $120, finding no fault, nearly or quite paying for the work then done, proportionally to the whole; and that, when the mortar wall was completed, he, with the full knowledge of the character of the work, paid the further sum of $70 without finding any fault, on account of the mortar wall, leaving only $30 more due on the job which the plaintiff retained until the dirt should be removed from the cellar. This claim was denied by the plaintiff, who offered evidence tending to show that he had no oversight or superintendence of the work of building the cellar or the walls of the same; that the house frame was placed upon blocks of timber resting on the wall in a proper manner; that the jack screws were only used to raise up the building after it had settled by reason of the defect in the cellar wall, and were then used in a proper manner, and were not placed upon the wall; and that he had no knowledge of the character of the wall when he paid the $120, nor when he paid the $70, at which time the plaintiff owed the defendant money for other work.

" The judge, upon the several points, instructed the jury as follows: General payments on account of the work are not to be construed as waiving defects therein, nor as accepting such defective work, unless such defects were known to the plaintiff at the time such payments were made. On perceiving that the defendant was failing to fulfil his contract, the plaintiff might legally and properly pay him the whole price of $220, or he might refuse to make further payments altogether, and rely on an action of tort for damages. The paying or not paying would in and of itself not raise a material inference as tending to show any acceptance of the defendant's job. If, as the plaintiff claims, the defendant, by his careless and negligent performance of his undertaking to excavate a cellar, and to furnish materials for and build a cellar wall, has injured the plaintiff so that he has been put to labor and cost in reconstructing or repairing the cellar or the building placed upon it, or so that said cellar and building were as to their value or uses defective beyond reparation, or could not be repaired unless by wholly or partially reconstructing the same at a cost greatly disproportionate to their

Moulton *v.* McOwen.

value and uses, the plaintiff may recover the value of the labor and the cost of reconstructing and of repairing said cellar and building, made necessary by the defendant's negligence and carelessness, and in addition thereto such an amount of money as will indemnify the plaintiff for any injury to him which may be reasonably imputed to the defendant's careless and negligent performance of said undertaking, in the value and use of said cellar and building, which cannot be remedied by any repair or reconstruction of said cellar and building, unless the same was made at a cost greatly disproportionate to the value and uses of said cellar and building. If, however, as the defendant claims, his undertaking was upon the condition that the plaintiff would supervise, superintend and participate in the excavation, the choice of materials for, or the construction of, the said cellar, and if any defects in the materials and construction of said cellar were caused by a modification of the original undertaking agreed upon by the plaintiff and defendant, required by the plaintiff or acquiesced in by him, or were caused by mistake, errors in judgment, or haste in the construction of said cellar, in which, according to their mutual undertaking, the plaintiff and the defendant participated, the plaintiff cannot recover, nor can he recover for the injury to the cellar and building arising from said defects which is irreparable, or for the labor and cost made necessary to remedy said defects. It was not the plaintiff's duty to supervise, superintend or direct the work which the defendant undertook, in the absence of an agreement to do so; and his failure to do so would not excuse the defendant's negligence or carelessness in the performance of his agreement; but if, at any time, or in reference to any detail of the work, the plaintiff, having his attention directed to it by the defendant or his servants, expressly or impliedly by his silence acquiesced in a modification of the wall, which ultimately caused a defect in the cellar or affecting the building upon it, he cannot impute such defect to the defendant's negligence or carelessness, as a ground for recovering in this action, although it was of such a nature that it might reasonably have been imputed to the defendant's carelessness and neglect. Defects in the cellar and

the building upon it, which may be reasonably imputed to the season of the year in which the work was undertaken and prosecuted, or to the fact that the building was put upon the cellar before the cellar was completed, and the cellar completed while the building was resting upon it, the plaintiff cannot recover indemnity for in this action ; nor is the defendant required to afford any explanation of such defects. Evidence of general payments of money by the plaintiff, without direction, to parts of the wall then done, or payments of money specifically applying to such parts of the work now alleged to have been defective by reason of the defendant's negligence and carelessness ; as well as residence and employment near the cellar ; are circumstances to be considered by the jury, tending to show the plaintiff's acceptance of and acquiescence in the same as well done, if they indicate that such defective condition was apparent or known to the plaintiff, but not otherwise.

" The defendant asked the judge to instruct the jury as follows : If the plaintiff, by the exercise of reasonable and ordinary care, might have known the quality of the materials and character of the work, then he was bound to exercise such care ; and, neglecting to do so, and not objecting to the work as it was being done, he cannot now complain of the negligence of the defendant. If the plaintiff knew what was being done, while the work was going on, and saw and understood the quality of the materials and the character of the work, and did not object thereto, then this is such an assent thereto and acceptance thereof as relieves the defendant from liability. If the plaintiff, by agreement, took the oversight of the work of constructing the cellar and walls, and took charge of the men while doing the work, then the plaintiff, and not the defendant, is responsible for any defects in the work. But the judge declined to give said instructions, and instructed as above.

" The plaintiff, against the defendant's objections, was allowed to show the condition of the house in 1869, (the work having been done in the winter of 1867–8,) for the purpose of estimating the damages arising from the defendant's carelessness. The jury found for the plaintiff, and assessed the damages

Moulton *v.* McOwen.

in the sum of $242.02; and they also found, specially, that the amount and value of the labor and cost expended in repairing or reconstructing the cellar and building, to remedy defects therein caused by the defendant's negligence and carelessness, were $92.02; that the cellar and building were affected, in their value and use, by defects which could not be repaired, and which were caused by the defendant's carelessness and negligence, to the amount of $150; and that the cellar and building, as affected by the defendant's carelessness and negligence in the performance of the contract, had a value, less than their value if there had been no neglect or carelessness of the defendant in the performance of the contract, of $242.02. The defendant excepts to the above rulings and refusals to rule."

These exceptions were argued at January term 1871, by the same counsel.

AMES, J. We can see no valid objection to the admission of Bagley as an expert upon the subject matter in relation to which he testified. He was not a master builder; but it is difficult to see why a journeyman carpenter of twenty-five years' experience, and who was employed on the building in question, should not be as well qualified to judge of the extent of its deficiencies and imperfections, as compared with the requirements of the contract, as if he had been a master builder.

Upon the question whether the plaintiff directed or consented to the manner in which the work was done, or waived all objection to either the workmanship or materials, the evidence seems to have been conflicting. The facts that the plaintiff lived near the building, that the work was done in the winter, and that payments were made, from time to time, on general account, and without directing them to be applied to certain special items, were all submitted to the jury as circumstances to be taken into consideration and tending to show (if the defective condition of the work was apparent or known to him) his acceptance of and acquiescence in the same as well done; but the court ruled that the mere payment of money, in and of itself, would not raise a material inference as tending to show an acceptance of the work; that is to say, as we understand it, that

the mere payment of the whole or part of the contract price would not amount to proof of a waiver of objections to the imperfection of the work, unless the circumstances under which such payment was made satisfied the jury that such a waiver was intended or ought to be inferred. The defendant has no ground of complaint against this ruling of the court.

The rule as to the computation of the damages which the plaintiff might recover was also correct. It might perhaps have been stated, with more brevity, as being the amount in dollars and cents in which the value of the cellar and building as left by the defendant fell short of the value which they would have had if they had been finished according to the contract. It was certainly allowable and proper for the plaintiff to make at his own expense such repairs, or furnish such additional labor and materials, as should supply all such deficiencies as could be supplied without disproportionate or unreasonable expense. If, after this was done, there should still remain deficiencies and injuries which could not be repaired except at a cost greatly disproportionate to the value of the building, he would be entitled to have the effect of those deficiencies and injuries in diminishing its value estimated by the jury. They have found that he expended $92.02 in remedying defects, and that after so doing there still remains a loss upon the building of $150, caused by the defendant's neglect. These two sums together make up the damages according to the rule given in our previous decision in this case. See also *Hayward* v. *Leonard*, 7 Pick. 187; *Veazie* v. *Hosmer*, 11 Gray, 396; *Gleason* v. *Smith*, 9 Cush. 484; *Cardell* v. *Bridge*, 9 Allen, 355; *Thompson* v. *Purcell*, 10 Allen, 426.                    *Exceptions overruled.*