Merrimack, }
Dec., 1898. }

## DANFORTH & a. v. FREEMAN.

Where an agreement to build provides that an allowance made to the owner for hardware shall not include certain specified materials, " or ordinary builder's hardware," which are to be furnished by the contractor, the owner is chargeable, in addition to the contract price, with hardware not included within the exception and in excess of the allowance.

Where the owner of a building in process of erection is aware of a variation from the specifications by the contractor and fails to object in time to stop the work, his assent and waiver found therefrom will have the same effect to release the contractor as an express agreement to vary.

In an action to recover a balance due on a building contract, from the terms of which there has been a variation, the plaintiff is entitled to the fair value to the defendant of the work done, not exceeding the contract price; and this amount may be determined by deducting from the contract price the fair value of correcting any bad work, so far as it can be corrected, and the damage resulting to the owner from any variation which is not capable of correction.

ASSUMPSIT. The facts which were found by a referee appear in the opinion.

*Albin, Martin & Howe*, for the plaintiffs.

*Matthews & Sawyer*, for the defendant.

PARSONS, J. This is an action to recover the balance due upon the contract price for building a house, with sundry claims for extra work. The case has been heard by a referee, who states the account between the parties, in which he allows the plaintiffs the contract price and sundry items of extra labor and material, in all $3,234.58, and allows the defendant sundry cash payments and items for failure to comply with the terms of the contract, amounting to $2,923.35, and finds due the plaintiffs $311.23. The questions reserved upon the referee's report are as to the meaning of the clause in the contract relating to hardware, the allowance made by him for defective painting, and the rule of damages for the plaintiffs' failure to comply with some parts of the specifications. Upon the first question, the specifications, under the head of " Hardware," contain the following: " Allow $45 for hardware. This does not include nails, lead, zinc, window and other fasts, or ordinary builders' hardware, which are

to be furnished by contractor. Carpenter to fix all hardware." The contract has not been furnished us, but from the course of the argument we understand that the contract was to build a house for the defendant at a fixed price and according to certain specifications. The plaintiffs in their statement of the account charge the defendant, in addition to the contract price, with certain articles of hardware, and credit him with the allowance of forty-five dollars. That is, the plaintiffs claim the cost of certain articles of hardware in addition to the contract price. The defendant admits he was to pay for all hardware in excess of forty-five dollars, except that which the clause under discussion provided the contractor should furnish, viz., nails, lead, zinc, window and other fasts, or ordinary builders' hardware. As the parties had apparently the same understanding of the general effect of the clause, the only possible ground of difference perceived is as to what particular articles were to be paid for out of the allowance of forty-five dollars, and what were to be furnished by the contractor. The term " ordinary builders' hardware " may have a signification in the building trades designating particular articles of hardware; whatever it includes the contractor was to pay for. If there was dispute upon this question, the report presents no question for our determination, for there is nothing before us upon which to base any opinion as to what articles are covered by the term " ordinary builders' hardware," and the referee's finding that hardware not included in the exception of the value of $55.40 was furnished cannot be disturbed. As provided in the report, including the items admitted by the defendant, there should be allowed on the item of hardware $13.42 instead of $39.46.

The painting was not done in a workmanlike manner, nor as required by the contract. It is found there was no agreement to vary the contract, but that the defendant knew that the work was not being done by the sub-contractor as provided in the specifications and failed to make objections to the contractor in time to stop the work; and on that ground the referee ruled the defendant was not entitled to full damages and allowed fifty dollars only. Whether there was a waiver of strict compliance with any part of the specifications, was a question of fact. *Fuller* v. *Brown*, 67 N. H. 188. Knowledge by the defendant of the variation from the specification and his failure to object was evidence from which his assent thereto and waiver of the right to object might be found. *Bailey* v. *Woods*, 17 N. H. 365. An assent by the owner to variation from the contract, found from his knowledge and silence as the work progressed, would have the same effect in releasing the contractor as an express agreement. A finding of such knowledge and assent, and consequent estoppel, is not inconsistent with the finding that no agreement

to vary was proved. If the agreement to vary had been proved, the question of waiver would not have arisen. The report appears to mean that for the unskillful work and variance to which the defendant did not assent, and as to which he is not thereby now estopped to object, fifty dollars is awarded as damages. But as the parties do not agree upon the construction of the report, if either party desires, the report may at the trial term be recommitted to the referee, with instructions to report the damage, if any, to the defendant from the unskillful work and variation from the contract in the painting to which he did not assent and is not now estopped to object.

The remaining question is as to the rule of damages adopted by the referee. It is conceded that the plaintiffs are entitled to payment for their work and materials, and the defendant to an allowance for sundry failures to comply with the specifications; and it is inferred from the whole report that the contract was substantially completed by the plaintiffs, and that the defendant has received the benefit of such work and materials as the plaintiffs have furnished. The only question between the parties is as to the rule of damages by which their respective claims should be determined. Under a special contract for the manufacture or sale of a specific chattel, the purchaser is not bound to accept one differing from the one bargained for though of equal value and usefulness. *King* v. *Rochester*, 67 N. H. 310; *New Market Iron Foundry* v. *Harvey*, 23 N. H. 395, 409. In such cases no recovery can be had for labor or material in constructing a strictly personal chattel which does not conform to the requirements of a special contract for its manufacture, because the purchaser, not having accepted, and not being obliged to accept, the different article tendered, has received no benefit from the labor and materials of the contractor. But in special contracts for labor day by day, or for labor and materials in erecting a building upon the land of another, the person for whom the work is done necessarily receives the value of the work done as it is done, and if any advantage has accrued to him therefrom, is liable to pay for the benefit received,— the worth to him of the partial performance of the contract by the other party. *Wadleigh* v. *Sutton*, 6 N. H. 15; *Britton* v. *Turner*, 6 N. H. 481; *Bailey* v. *Woods*, 17 N. H. 365; *Davis* v. *Barrington*, 30 N. H. 517. In the present case the defendant was entitled to have a house such as the contract called for at the contract price. The effect of the contract is to make the contract price the measure of the benefit which the owner would receive from a compliance with the contract. For a structure worth less to him, from failure to comply with the contract, he is liable to pay only the advantage to him of such a house, compared with the one he should have had. Estimating his liability under the contract completely performed at

the contract price, the benefit received, for which he should pay on the basis of the contract, is conveniently ascertained by deducting from the contract price the damage occasioned by the builders' failure to perform the contract. What elements are to be considered in estimating such damage depends upon the facts of the particular case and the nature of the defect or failure. "Sometimes the measure of damages is the necessary cost of making the work accord to the specifications. . . . The defect may be of such a kind as to diminish the value of the house but little, while to make the work conform literally to the contract would involve reconstruction at unreasonable and disproportionate expense." The question ordinarily is, how much less is the building fairly worth to the defendant than it would have been if the contract had been performed? *Hayward* v. *Leonard*, 7 Pick. 181; *Veazie* v. *Hosmer*, 11 Gray 396; *Moulton* v. *McOwen*, 103 Mass. 587; *Powell* v. *Howard*, 109 Mass. 192; *Cullen* v. *Sears*, 112 Mass. 299, 308; *White* v. *McLaren*, 151 Mass. 553, 557, 558; *Railroad Co.* v. *Smith*, 21 Wall. 255, 261. There may be cases where the commercial value of the house for sale or use would be the test of the value to the owner, as when the house is built for sale or rent; but if at the same time it is of less value to the owner for the uses and purposes for which he designed it, or in any other way he has been damaged by the contractor's breach of the contract, he is entitled in a suit for the contract price to such a reduction as will compensate him for the loss sustained. Evidence of the commercial value of the house for sale or use, to which the defendant excepted, was properly received, as bearing upon the worth to the defendant of the house as constructed; but the fact, if proved, that the house built could have been sold for as much as one constructed in accordance with the contract does not conclusively establish that the defendant is not damaged by the departure from the contract. The rule of damages laid down by the referee — that the plaintiffs are entitled to the fair value of the work done by them in building the house, not exceeding the contract price, and the defendant is entitled to the cost of correcting any bad work done by the contractor, so far as it can reasonably be corrected, and to the fair value of the damage done to him where it cannot now be reasonably replaced, as an offset in recoupment — is not strictly correct as a statement of the plaintiffs' right of recovery; for it is clear that the ground upon which the plaintiff recovers, where for failure of performance he cannot recover upon the contract, is not the value of the work done, but the benefit received by the defendant. The statement of the referee as to his application of this rule, however, makes it clear that by the fair value of the work done he means the value to the defendant. So understood, the rule is correct. This understanding is apparent from the

report, which states that the referee has allowed the contract price for the whole to the plaintiffs, and credited such amounts for the failures to comply with the contract as he could determine to be just from the evidence, allowing the defendant the expense of correcting any bad work, so far as it can be corrected or reasonably replaced. This method of computation adopted by the referee is reasonable and in accordance with the authorities. *Pinches* v. *Church*, 55 Conn. 183.

The plaintiffs are entitled to judgment for $311.23 less $26.04, the erroneous allowance for hardware, or $285.19, unless upon recommittal a different sum be found as damages for the painting.

*Case discharged.*

All concurred.