J. F. WHITE CONTRACTING COMPANY, Defendant, Appellant,

v.

NEW ENGLAND TANK INDUSTRIES OF NEW HAMPSHIRE, INC., Plaintiff, Appellee.

No. 6991.

United States Court of Appeals First Circuit.

April 29, 1968.

**450**

qua river. Appellant, J. F. White Contracting Co. (White) agreed to build the dock, consisting of four cylindrical metal cells filled with sand and gravel, connected with each other and with the shore by catwalks. Appellee, New England Tank Industries of New Hampshire, Inc. (Tank), owner of the premises, sues for defective workmanship. Unlike the Piscataqua itself, the case meandered interminably for five years before a jury trial was finally reached. From an adverse verdict in the amount of $20,000 White takes this appeal.

Appellant's most serious contention is that an exchange of correspondence between the parties constituted a release or accord and satisfaction. Tank, on August 30, 1961, listed some seven items to be completed, none of which included the defects sued upon—ruptures in two of the cells and a lack of symmetry (being "out of round") in one of them. White agreed that it would do this work in completion of its obligations and, claiming to have taken care of each of these items, argues that this bars recovery for any other alleged defects. The jury was instructed to find for White if it concluded that this work had been done. It did not do so. Moreover there is enough evidence in the record that Tank, when it listed the remaining items to be taken care of, did not know of sizable ruptures to the cells below the waterline.

■ We cite only the testimony of one of White's witnesses that he had received a call from Tank's treasurer and general manager complaining about split cells eight days before Tank stipulated the seven items to be completed, without mentioning anything about ruptured cells. The jury, which had been presented with a picture of an owner jealous of its rights to the point of picayune harassment, was entitled to believe that absence of mention meant absence of knowledge. The remaining evidence of knowledge of these defects was the kind of contradictory testimony which is peculiarly appro-

Irving H. Soden, Concord, N. H., with whom Sulloway, Hollis, Godfrey & Soden, Concord, N. H., was on brief, for appellant.

Lindsey R. Brigham, Portsmouth, N. H., with whom Griffin, Harrington, Brigham & Taylor, Portsmouth, N. H., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This appeal concerns a contract to build oil tanker dock facilities on the Piscata-

priate for the judgment of a jury.[1] Contrary to appellant's assertion, the evidence of the underwater ruptures and Tank's ignorance thereof laid a sufficient predicate for instructions that "An acceptance does not constitute a waiver of hidden or latent defects not discoverable by the exercise of reasonable care and diligence and of which the owner was ignorant at the time of acceptance. * * * "

Appellant, in addition to its "accord and satisfaction" argument, makes a similar contention that recovery is barred by a contract provision which stipulated that approval of invoices by Tank's engineer was "final, conclusive, and binding on both parties". Without saying what effect we would give to such a provision under the factual circumstances of this case, we merely observe that we cannot consider this issue on appeal since appellant neither pleaded it as an affirmative defense nor had it "raised, considered nor passed upon in the district court." Nakdimen v. Baker, 111 F.2d 778, 782 (8th Cir. 1940), cert. denied, 311 U.S. 665, 61 S.Ct. 22, 85 L.Ed. 427 (1940); Fed.R.Civ.P. 12(h), 28 U.S.C.

The issues we have discussed related to the asserted error of the district court in refusing to direct a verdict for White on the entire case. White argues alternatively that it was error to have allowed the question of one of the cells being "out of round" to go to the jury. This cell had been struck in the process of installation by a ship and knocked "out of round". White undertook to repair it. This damage, being above the waterline, was visible and much less hidden or latent than the underwater ruptures.

Even if the fact that the dented cell was located some four hundred feet from shore constituted enough evidence of latency for the jury, and even if Tank had received something less than the cylindrical cell it had bargained for, there was no evidence of the extent to which it was damaged. There was no evidence that the utility or longevity of the cell was affected, nor does there seem to have been sufficient evidence regarding the cost of repairing the dent. The underwater inspection report of the diver Howard B. Pratt did mention that cell 3 was "noticeably out of round" and his original estimate of repairs to cell 3 "as per our drawing" was $43,150. This figure might conceivably be considered some evidence of the cost to repair the dented cell. Without more, however, it would seem to be an insufficient basis for the jury to make any rational determination.

While the court's action in submitting the "out-of-roundness" issue to the jury was error, we are not persuaded that there was even a remote possibility that this error affected the verdict or "the substantial rights of the parties". Fed.R.Civ.P. 61, 28 U.S.C. Nor does appellant assert that it did. Briefs of both sides argue the adequacy of damages issue by reference solely to testimony of cost of repairs and value addressed to the ruptures. Counsel for Tank did not argue the issue at all to the jury while counsel for White made it clear that it ought not be considered.[2] Finally, the

1. The only evidence not in this category was a Tank memorandum dated January 2, 1962 which seemed to indicate that Tank was fully aware of the precise sizes of the ruptures before divers had measured them. Arguably this tended to show that Tank had known this information four months earlier when it listed the seven items necessary for completion of the job. However, the identity of wording of Tank's memorandum with that of a diver's report of January 2, 1962 and the identity of the measurements in Tank's memorandum with those of a diver's report of January 18, 1962 could reasonably have led the jury to believe that Tank, in making its own memorandum, copied the language of the first diver's report and the measurements of the second diver's report. This would date Tank's knowledge of the damage after January 18, 1962 and therefore long after its listing the seven items necessary for final acceptance.

2. In his closing argument White's counsel stated:
"Now this gets us down purely and simply almost to the issue of the rup-

court's instructions on damages were proper and emphasized that only evidence of value, which included evidence of cost of repairs, could be considered. There is no reason to suspect that the jury did not follow these instructions.

■■ As to appellant's other arguments, we find in the record enough evidence to enable the jury to differentiate between defective workmanship and damage attributable to a supervening collision. There was also competent evidence from which the jury could find the cost of correcting the defective workmanship and this, under the circumstances, was a proper basis for computing damages. See Danforth v. Freeman, 69 N.H. 466, 469, 43 A. 621 (1898); cf. Johnson v. Waisman Bros., 93 N.H. 133, 135, 36 A.2d 634 (1944). Finally, we feel that the trial court's instructions furnished the jury with sufficient understanding of the law to arrive at a fair verdict and that appellee's jury arguments were not improper.

Affirmed.

tures in Cells 2 and 3, on which everybody's been concentrating. I am not going to waste any of your time on this out-of-round issue. No expert in this case has said that this in any way affects the structural integrity of that

dock, and I think it defies common sense to get up here and argue to you that it does. * * * Now, I am going to devote my entire argument to the question of the ruptures. * * * "