Hillsborough
No. 80-364

### M. W. GOODELL CONSTRUCTION CO., INC.

v.

### MONADNOCK SKATING CLUB, INC.

### MONADNOCK SKATING CLUB, INC.

v.

### M. W. GOODELL CONSTRUCTION CO., INC.

April 17, 1981

*Bradley & Talbot,* of Keene (*Homer S. Bradley, Jr.,* on the brief and orally), for M. W. Goodell Construction Co., Inc.

*Woodbury and Rowe,* of Milford (*Robert H. Rowe* on the brief and orally), for Monadnock Skating Club, Inc.

DOUGLAS, J. This case involves a suit by M. W. Goodell Construction Co., Inc. (Goodell) to recover the balance due on a contract with Monadnock Skating Club, Inc. (Monadnock) for the construction of an ice-skating rink in Milford and a countersuit by Monadnock for defective performance of the contract by Goodell. The cases were consolidated for trial before a Master (*Peter J. Bourque,* Esq.), who made certain findings and rulings and recommended a verdict for Monadnock in the amount of $29,500 and a verdict for Goodell in the amount of $8,085.54. The Superior Court (*Goode,* J.) issued an order approving the master's recommendations. Goodell appeals, alleging that there is insufficient evidence to support the award. We affirm the findings of the master.

 In breach of contract cases, the purpose of awarding damages is not merely to restore the plaintiff to his former position, but to give him the benefit of his bargain—to put him in the position he would have been in if the contract had been fulfilled. *Emery v. Caledonia Sand and Gravel Co.,* 117 N.H. 441, 446, 374 A.2d 929, 933 (1977). When a contractor breaches his agreement by defective performance, that purpose is effectuated by using one of two measures of damages, depending upon the circumstances of each case. The ordinary measure of damages is the cost of remedying the defective work, but that amount "May be withheld if 'physical reconstruction and completion in accordance with the contract [would] involve unreasonable economic waste by destruction of usable property or otherwise.' " *Id.* at 447, 374 A.2d at 933 (quoting J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 230

(1970)). In that case, the injured party may be awarded the difference between the value the building would have had if constructed as promised and its value as actually constructed. *Danforth v. Freeman*, 69 N.H. 466, 468–69, 43 A. 621, 622–23 (1898); RESTATEMENT OF CONTRACTS § 346(a) (1932); J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 230 (1970).

■ ■ The master in this case found that it would not involve unreasonable economic waste to remedy the defective work, and he awarded Monadnock damages equal to the cost of repairing the defects in the skating rink. Goodell argues that certain repairs need not be made and, therefore, the measure of damages should be the diminution in value of the building, not the cost of repair. Specifically, it argues that Monadnock need not replace the discolored purlins, because the fault is not structural, and that it need not place footings under the interior weight-bearing walls because, although the construction is in violation of the Milford Building Code, the town has not brought any enforcement action. That argument mistakes the purpose of compensatory damages. Goodell has breached its contract, and Monadnock is entitled to have the building erected according to the terms of its agreement unless it would be wasteful to do so. *See Emery v. Caledonia Sand & Gravel Co.*, *supra* at 447, 374 A.2d at 933; *Danforth v. Freeman*, *supra* at 468–70, 43 A. at 622–23; 5 A. CORBIN, CONTRACTS § 1089–90 (1964); D. DOBBS, HANDBOOK ON THE LAW OF REMEDIES § 12.21, at 897 (1973). In this case, the cost of doing that work is less than five percent of the total contract price. We agree with the master that the repairs are not economically wasteful and that such an award is proper.

■ Goodell also argues that there was insufficient evidence for the master to have determined the amount of the damages because the only evidence of damages introduced by Monadnock was a lump sum figure and there was no basis for computing the cost to repair specific defects. In reviewing damage awards, this court will view the evidence in the light most favorable to the prevailing party. *93 Clearing House, Inc. v. Khoury*, 120 N.H. 346, 350, 415 A.2d 671, 674 (1980); *Dana A. Wein & Sons v. Keller*, 118 N.H. 545, 547, 391 A.2d 878, 880 (1978). In this case, the record includes Goodell's pleadings and testimony by Goodell's experts as well as testimony by Monadnock's experts, all of which support the master's damage figure. Although it is not clear to us how the master arrived at the precise amount he awarded, the law does not require "mathematical certainty" in computing damages. *Peter*

*Salvucci & Sons Inc. v. State*, 110 N.H. 136, 154, 268 A.2d 899, 911 (1970)). The computation of the damage award is for the trier of fact, and we will not overturn his conclusion if there is evidence to support it. *See 93 Clearing House, Inc. v. Khoury, supra* at 350, 415 A.2d at 674; *Grant v. Town of Newton*, 117 N.H. 159, 162, 370 A.2d 285, 287 (1977). In the future, however, it would facilitate this court's review if masters would more precisely itemize damage awards.

 Finally, Goodell argues that the evidence does not support the master's finding that twenty-seven of the roof corrugations needed to be replaced. The record, however, contains photographs of the roof damage and testimony of one of Monadnock's experts that twenty-seven corrugations were rusted over greater than one-third of their surface. That evidence is sufficient to support the master's finding that those sheets needed replacement. We will not disturb the findings of a trier of fact if supported by the evidence. *Automated Housing Corp. v. First Equity Assoc's, Inc.*, 121 N.H. 177, 428 A.2d 886 (1981).

*Affirmed.*

BROCK, J., did not sit; the others concurred.