Rockingham
No. 80-480

PETER PETRIE–CLEMONS & a.

v.

WALDO BUTTERFIELD

February 19, 1982

*Aeschliman & Tober*, of Portsmouth (*Stephen L. Tober* on the brief and orally), for the plaintiffs.

*Sanders & McDermott P.A.*, of Hampton (*Wilfred L. Sanders, Jr.*, on the brief and orally), for the defendant.

Bois, J.  The defendant, Waldo Butterfield, appeals from a Superior Court (*Mullavey*, J.) order approving a master's report which recommended a $10,640 verdict for the plaintiffs, Peter and Susan Petrie-Clemons.  The verdict, comprising two distinct

awards, entitled the plaintiffs to recover damages for lost profits caused by the defendant's breach of contract, and an additional sum in quantum meruit, resulting from the defendant's unjust enrichment. The defendant challenges both awards. We affirm the portion of the verdict concerning contract damages, but remand for further findings regarding the amount awarded in quantum meruit.

In the summer of 1976, the plaintiffs sought to move their pottery business from New York to New Hampshire. They arranged to rent part of a building, owned by the defendant, in Stratham, New Hampshire. The building, which the defendant had previously used in his poultry business, had been unoccupied for several years and lacked plumbing and heating facilities. The Master (*Mayland H. Morse, Jr.*, Esq.) found that the plaintiffs paid the defendant $200 in rent and received a one-year oral lease on the "old hen coop."

The plaintiffs moved into the premises and began their operations in August of 1976. Shortly thereafter, the parties negotiated an oral agreement, whereby the plaintiffs obtained a one-year option to buy the property for $25,000. When the plaintiffs decided to exercise this option, the defendant's attorney drew up a purchase and sale agreement which, according to the master's findings, all of the parties later signed.

Relying on the purchase and sale agreement, the plaintiffs made substantial repairs and improvements to the Stratham property. They established a manufacturing area and a business office on the first floor of the building, while constructing a two-bedroom apartment and a glass-enclosed porch on the second floor. In addition to their time and labor, they expended $7,223.67 in making these improvements. The defendant, who visited the premises daily while the construction work proceeded, had full knowledge of the plaintiffs' actions and never objected to the improvements.

At the time of the closing scheduled in the purchase and sale agreement, the plaintiffs were ready, willing and able to comply with the terms of the agreement. When the defendant, however, tendered a deed containing two conditions which were not part of the original agreement, the plaintiffs refused to proceed until the defendant deleted the new conditions. As a result of these complications, the parties failed to consummate the agreed-upon sale.

Relations between the parties rapidly deteriorated during the next few months. The defendant accused the plaintiffs of stealing certain of his materials and insisted that they leave the premises

immediately. In light of the defendant's growing antagonism, the plaintiffs vacated the premises in April 1977, four months prior to the end of their lease. The defendant subsequently sold the property, by a deed without the disputed conditions, to another buyer for $25,000.

The plaintiffs brought suit against the defendant in superior court. Following a trial, the master found that the defendant had breached both the purchase and sale agreement and the oral lease, and had wrongfully evicted the plaintiffs from the property. The master ruled that the plaintiffs were entitled to damages of $5,640 for profits lost during their forced relocation. In addition, he found that the improvements made by the plaintiffs unjustly enriched the defendant, and he therefore recommended an award of $5,000 in quantum meruit. The superior court entered a verdict in accordance with the master's report, and the defendant brought this appeal.

The defendant challenges the award of damages for lost profits on several grounds. He first argued that the master erred in ruling, as a matter of law, that the plaintiffs' lost profits were a foreseeable consequence of the defendant's breach. He claims that the plaintiffs failed to offer sufficient evidence regarding the foreseeability of these damages.

■■ At the outset, we note that, in reviewing damage awards, we will consider the evidence "in the light most favorable to the prevailing party." *Martin v. Phillips*, 122 N.H. 34, 37, 440 A.2d 1124, 1126 (1982) (quoting *M. W. Goodell Const. Co. v. Monadnock Skating Club, Inc.*, 121 N.H. 320, 323, 429 A.2d 329, 331 (1981)). Furthermore, we will not disturb the decision of the fact-finder unless it is clearly erroneous. *Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. 28, 30, 424 A.2d 1141, 1142 (1981).

■■ Consequential damages are warranted if they are reasonably foreseeable by the parties at the time the contract is made. *Martin v. Phillips*, 122 N.H. at 37, 440 A.2d at 1126; *Zareas v. Smith*, 119 N.H. 534, 538, 404 A.2d 599, 601 (1979). The requirement of reasonable foreseeability may be satisfied in either of two ways: the requirement may be satisfied as a matter of law if the damages follow the breach in the ordinary course of events; or it may be satisfied if the claimant specifically proves that the breaching party "had reason to know the facts and to foresee the injury." *Emery v. Caledonia Sand and Gravel Co.*, 117 N.H. 441, 446, 374 A.2d 929, 932 (1977) (quoting *Johnson v. Waisman Bros.*, 93 N.H. 133, 135, 36 A.2d 634, 636 (1944)).

■ In this case, the master could rationally have concluded as a matter of law that the plaintiffs' lost profits followed naturally from the defendant's breach of the rental agreement. Nonetheless, even assuming *arguendo* that this conclusion was unfounded as a matter of law, we find that the master could properly have ruled, based on the evidence before him, that the defendant had reason to foresee the loss of profits which the plaintiffs incurred. According to testimony at trial, the defendant knew from the start that the plaintiffs intended to operate a pottery business in his building. He testified that he had been involved in business for most of his life, and that he had had dealings in real estate and sales. Certainly, he should have realized that an interruption in the plaintiffs' operations would result in diminished profits. The master thus did not err in finding the plaintiffs' lost profits reasonably foreseeable.

The defendant also contends that the damages awarded for lost profits constituted a windfall for the plaintiffs. He claims that the plaintiffs would have had to relocate, notwithstanding his wrongful conduct, upon the termination of their lease in August 1977, and that they would have incurred similar lost profits at that time.

■ We find no merit in this argument. We note that the plaintiffs would not have faced the necessity of moving their operations if the defendant had fulfilled his obligations under the purchase and sale agreement. The evidence, moreover, reveals that the defendant's breach of the rental agreement and his wrongful eviction of the plaintiffs disrupted their operations and exacerbated their losses. The testimony indicated that the defendant's actions forced the plaintiffs to move their operations unexpectedly in a haphazard fashion. We hold that the master correctly ruled that the plaintiffs' lost profits resulted from the defendant's wrongful conduct.

The defendant next argues that the master erred in awarding damages for lost profits because the plaintiffs were engaged in a new business whose prospective earnings were too speculative and uncertain for determination.

■■ The law does not require "absolute certainty" for recovery of damages. J. CALAMARI & J. PERILLO, THE LAW CONTRACTS § 14-8, at 528 (2d ed. 1977). We will uphold an award of damages for lost profits if sufficient data existed indicating that profits were reasonably certain to result. *See Wilko of Nashua, Inc. v. Tap Realty, Inc.*, 117 N.H. 843, 850, 379 A.2d 798, 802–03 (1977); *Van Hooijdonk v. Langley*, 111 N.H. 32, 34–35, 274 A.2d 798, 799–800 (1971); RESTATEMENT OF CONTRACTS § 331, at 515 (1932).

■ The evidence in this case revealed that the plaintiffs established their business in New York three to four years prior to moving to New Hampshire. According to testimony before the master, the business employed eleven individuals, had acquired reputable clients like Bonwit Teller and Macy's, and had a history of profits. The evidence suggested that the business was growing rapidly and that the move to New Hampshire resulted partly from a need for added space. Furthermore, the business was essentially a manufacturing entity, and its relocation was therefore likely to have only a minimal impact upon its sales. Based on these facts, we hold that the plaintiffs' profits were reasonably certain and that sufficient data existed for the master's award of damages.

The defendant's final argument with respect to the damages awarded for lost profits concerns the formula which the master employed in calculating the losses. The defendant argues that the master erroneously based his calculations on the estimated level of production at the plaintiffs' plant, instead of properly considering the anticipated number of sales. He also contends that the master applied an incorrect "profit margin," and failed to explain the rationale underlying his computations.

■ Although trial courts and masters should itemize damage awards, we do not require mathematical certainty in the computation of these awards. *M. W. Goodell Const. Co. v. Monadnock Skating Club, Inc.*, 121 N.H. at 323–24, 429 A.2d at 331.

■ In the instant case, the master determined the amount of the plaintiffs' lost profits by multiplying the number of items which the plaintiffs produced per week, the average gross selling price of each item, the estimated profit margin per item, and the number of weeks during which production was halted. We find that this formula accurately reflected the plaintiffs' lost profits. The master's reliance on the level of production of the plaintiffs' business was permissible because, as previously mentioned, the evidence revealed that the business operated essentially as a manufacturing entity and had a proven history of sales. In addition, we find that the master, in his discretion as fact-finder, was certainly entitled to accept the testimony that the plaintiffs' profit margin was between 43 percent and 50 percent. *See Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. at 30, 424 A.2d at 1142. Finally, we hold that the rationale underlying the master's accounting formula was readily apparent from his findings and conclusion.

■ On the whole, we cannot say that the master's findings

regarding the contract damages were clearly erroneous. *See Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. at 30, 424 A.2d at 1142. Viewing the evidence in the light most favorable to the plaintiffs, the prevailing parties below, *see M. W. Goodell Const. Co. v. Monadnock Skating Club, Inc.*, 121 N.H. at 323, 429 A.2d at 331, we conclude that the master properly awarded damages for the plaintiffs' lost profits.

The defendant also challenges the sum which the plaintiffs recovered in quantum meruit for unjust enrichment. He contends that the plaintiffs' improvements did not benefit him because, upon selling the realty, he received the same price that the plaintiffs had agreed to pay for the property without the improvements.

In the absence of a contractual agreement, a trial court may require an individual to make restitution for unjust enrichment if he has received a benefit which would be unconscionable to retain. *Morgenroth & Assoc's, Inc. v. Town of Tilton*, 121 N.H. 511, 514, 431 A.2d 770, 772 (1981); *Presby v. Bethlehem Village District*, 120 N.H. 493, 495, 416 A.2d 1382, 1383 (1980). Unjust enrichment may exist when an individual receives a benefit as a result of his wrongful acts, or when he innocently receives a benefit and passively accepts it. *Nute v. Blaisdell*, 117 N.H. 228, 232, 374 A.2d 923, 925 (1977). We have held that the trial court must determine whether the facts and equities of a particular case warrant a remedy in restitution. *Presby v. Bethelehem Village District*, 120 N.H. at 495–96, 416 A.2d at 1384.

Because of the clear evidence presented at trial regarding the defendant's wrongful conduct and the extensive repairs and improvements which the plaintiffs made to his property, we hold that the master could reasonably find that the defendant received a benefit which was unconscionable to retain. Restitution therefore was a proper remedy.

The correct measure of restitution for unjust enrichment is the value of the benefit received by the unjustly enriched party. *Martin v. Phillips*, 122 N.H. at 38, 440 A.2d at 1126.

After reviewing the record before us, however, we find no evidence regarding the value of the benefit which the defendant received. We reject the plaintiffs' contention that the amount of money which they expended in making the repairs constituted a sufficient basis for determining the benefit conferred upon the defendant. *See Martin v. Phillips*, 122 N.H. at 38, 440 A.2d at

1126. The appropriate basis for determining the amount of the defendant's benefit is the difference between the market value of the realty before and after the improvements. *See* 3 WILLISTON ON CONTRACTS § 537, at 839 (3d ed. 1960); RESTATEMENT OF RESTITUTION § 155 & Comments c and d, at 611–16 (1937). In view of the absence of sufficient evidence concerning the value of the Stratham property prior to and subsequent to the plaintiffs' improvements, we remand for further findings regarding the amount of the defendant's benefit, and for recalculation of the award. Consistent with our recent decisions, the master should specifically state the manner in which he arrives at his conclusion. *See Martin v. Phillips*, 122 N.H. at 38, 440 A.2d at 1126; *M. W. Goodell Const. Co. v. Monadnock Skating Club, Inc.*, 121 N.H. at 324, 429 A.2d at 331.

> *Affirmed in part; reversed in part; remanded.*

All concurred.