FDIC v. Nash                         CV-97-187-JD   07/17/97
                  UNITED STATE DISTRICT COURT
                  DISTRICT OF NEW HAMPSHIRE

<u>Federal Deposit Insurance Corp.</u>

        v.                                  Civil No. 97-187-JD

<u>Gerald O. Nash, et al.</u>


                         O R D E R


     The plaintiff, the Federal Deposit Insurance Corporation
("FDIC"), brought this action to collect money owed under a
promissory note and to enforce a guaranty of payment.  The
defendants, Gerald Q. Nash and William P. Korsak, individually
and as general partners of TNK Associates ("TNK"), have
counterclaimed, alleging breach of contract and breach of the
implied covenant of good faith and fair dealing.  Before the
court is the plaintiff's motion to dismiss the defendants'
counterclaims (document no. 10).


                       <u>Background</u>[1]

     On January 23, 1989, Gerald Nash, William Korsak, and Samuel
Tamposi, as general partners of TNK, executed a promissory note
in favor of the Bank of New England ("BNE") in the amount of
$10,000,000.00.  The note was secured by a mortgage and security
agreement encumbering, <u>inter alia</u>, certain property in Nashua,
New Hampshire.  As a condition of the loan to TNK, Nash, Korsak,
and Tamposi executed and delivered to BNE a guaranty of payment.

_____

     [1]Unless otherwise noted, the facts relevant to the instant
motion are either not in dispute or have been alleged by the
defendants.

Pursuant to the terms of the guaranty, Nash, Korsak, and Tamposi jointly, severally, and unconditionally guaranteed the performance of the obligations of TNK under the note. The FDIC asserts that it became the holder of the note, the guaranty, and the mortgage upon its appointment as receiver for BNE's successor, the New Bank of New England.

On or about December 7, 1993, the FDIC and TNK entered into an agreement for release of the collateral pledged under the mortgage and security agreement (the "release of collateral agreement"). The terms of the release of collateral agreement provide that, upon payment of $6,000,000.00, the FDIC will release the mortgage on the encumbered property, but that the payment will not affect the deficiency on the original promissory note, which at the time of execution was valued at $3,974,289.02. The release of collateral agreement also provides:

> The parties hereto acknowledge that the remittance of the $6,000,000.00 payment, as provided for herein, is part of an overall attempt at settlement of all obligations arising under the Note. In specific, TNK and the Guarantors have entered into this transaction in reliance upon certain assurances from [an agent of the FDIC] that it has internally and preliminarily accepted a proposal that TNK and Guarantors be afforded an opportunity to satisfy and settle the Deficiency for a final settlement payment of $1,900,000.00 and that [the FDIC's agent] will continue to use its best efforts to obtain FDIC approval of the same.

Compl. Ex. D at ¶ 4.

At some point after the execution of the release of

2

collateral agreement, the defendants paid $6,000,000.00 in cash to the FDIC. In addition, the defendants attempted to tender $1,900,000.00 to the FDIC to satisfy the deficiency on the promissory note, but the FDIC rejected the defendants' tender.

On December 23, 1996, the FDIC filed an action to collect on money that it is owed under the promissory note.[2] Following the transfer of the case to the District of New Hampshire, the defendants filed counterclaims against the FDIC, asserting, inter alia, breach of contract and breach of the implied covenant of good faith and fair dealing based on the FDIC's refusal to accept $1,900,000.00 in full satisfaction of the outstanding deficiency. The defendants allege that "[t]he FDIC's . . . breach of the [release of collateral agreement] has damaged [them] at least to the extent of the difference between the judgment sought by the FDIC in this action . . . and the $1,900,000.00 called for under the terms of the [release of collateral agreement], plus costs and attorney's fees." Countercl. ¶ 57; see also id. ¶ 62.

## Discussion

The FDIC has moved to dismiss the FDIC's counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil

_____

[2]According to the FDIC, the outstanding balance on the note as of December 2, 1993, was $4,216,971.34, including principal of $2,825,310.51 and interest of $1,391,660.83.

Procedure, asserting that the defendants have failed to state a claim upon which relief can be granted. Specifically, the FDIC contends that the defendants' counterclaims should be dismissed because, even if paragraph four of the release of collateral agreement obligates it to accept $1,900,000.00 in full satisfaction of TNK's deficiency and even if the FDIC has breached this obligation, the defendants are not entitled to affirmative relief, but merely to a reduction in the amount for which they are liable under the promissory note. The defendants assert that, beyond any reduction in the amount owed under the note, they may also be able to recover against the FDIC for damages incurred as a result of the FDIC's breach of its obligations under the release of collateral agreement, including profits they lost as a result of their inability to obtain credit that would have been used to invest in certain real estate development projects.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether [the claimants] will ultimately prevail but whether the claimant[s are] entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Accordingly, the court must take the factual averments contained in the counterclaim as true, "indulging every reasonable inference helpful to the [claimants']

4

cause." <u>Garita Hotel Ltd. Partnership v. Ponce Fed. Bank</u>, 958 F.2d 15, 17 (1st Cir. 1992); <u>see also</u> <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16 (1st Cir. 1989). In the end, the court may grant a motion to dismiss under Rule 12(b)(6) "'only if it clearly appears, according to the facts alleged, that the [claimants] cannot recover on any viable theory.'" <u>Garita</u>, 958 F.2d at 17 (quoting <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).

It is a well settled principle of contract law that a party claiming breach of contract is entitled to those damages that are reasonably foreseeable to the parties at the time the contract was made. <u>See, e.g.</u>, <u>Petrie-Clemons v. Butterfield</u>, 122 N.H. 120, 124 , 441 A.2d 1167, 1170 (1982); <u>Restatement (Second) of Contracts</u> §§ 347, 351 (1981); <u>cf.</u> U.C.C. §§ 2-710, 2-715, 1B U.L.A. 313, 417 (1989). Damages are "reasonably foreseeable" if "they follow the breach in the ordinary course of events" or if the "breaching party had reason to know the facts and to foresee the injury." <u>Petrie-Clemons</u>, 122 N.H. at 124, 441 A.2d at 1170 (quotation marks omitted).

In the instant case, the defendants have alleged that the FDIC breached an enforceable obligation under the release of collateral agreement. Although they seek a reduction in the deficiency under the original note, they also claim that they

5

lost business opportunities as a result of the inability to obtain credit that resulted from the FDIC's conduct, and that the FDIC "knew or had reason to know [that] breach of the [release of collateral agreement] would cause economic harm" to them. Defs.' Objection to Mot. to Dismiss Countercl. at 6. Because there is a set of facts under which the defendants would be entitled to relief, the motion to dismiss defendants' counterclaims must be denied.

<u>Conclusion</u>

The plaintiff's motion to dismiss the defendants' counterclaims (document no. 10) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

July 17, 1997
cc:  Paul D. Maggioni Jr., Esquire
     Steven A. Solomon, Esquire
     Daniel W. Sklar, Esquire

6