### IN THE

# SUPERIOR COURT OF JUDICATURE.

#### FOR THE

## COUNTY OF SULLIVAN, AUGUST TERM,

### A. D. 1828.

## JABEZ SHAPLEY *versus* THOMAS BELLOWS.

When two parties have mutual executions against each other, either party is entitled, under the statute of this state, to have one execution set-off by the sheriff against the other, whatever may have been the nature of the actions, in which the executions may have been obtained.

An attorney has a lien upon a judgment, to the extent of his fees and disbursements in the suit, in which it was obtained ; and this right of lien is paramount to any rights of the parties, in the suit, to have mutual executions against each other set-off one against the other.

CASE against the defendant, as sheriff of the county of Cheshire. The declaration alleged, that one Joseph Jackson, at the May term of this court, in the year 1825, in the county of Cheshire, recovered judgment against the plaintiff for $50, damages, and $30, 77, costs of suit ; and having sued out execution on said judgment, on the 5th November, 1825, delivered the same to J. L. Putnam, a deputy of the defendant, who, by virtue of that execution, on the 1st February, 1826, seized sundry articles of the personal property of the plaintiff ; that on the 4th February, 1826, the said Putnam having said execution in his hands, the said Jabez tendered to him four executions duly issued on four several judgments, rendered

in favor of the said Shapley against said Jackson, and requested the said Putnam to set-off the said executions so tendered, against the execution so in the hands of the said Putnam, which said Putnam refused to do, but sold the said personal property.

The cause was submitted to the decision of the court, upon the following facts.

All the allegations of matter of fact in the plaintiff's declaration are correct and true. The said Joseph Jackson, was, at the time of the commencement of his said suit against said Shapley, which was trespass for pulling down a house, poor and not responsible, and J. H. Hubbard, Esq. as his attorney, instituted and prosecuted that suit to final judgment; and execution issued upon the judgment, May 10, 1825, and on the back of the execution was the following endorsement; " I order the contents of this execution to be paid to J. H. Hubbard, for the purpose of paying his fees and all expenses of this suit.                                JOSEPH JACKSON."

The execution so endorsed, was returned, not satisfied, and an alias execution, with a copy of said endorsement thereon, issued October 25, 1825, and was delivered by said Hubbard to said deputy of the defendant, with directions to levy the same, and not receive any execution as a set-off. The said deputy did collect the amount of the said execution of the plaintiff, although executions to a larger amount were tendered to him to be set off.

*J. H. Hubbard*, for the defendant, contended,

1st, That under the fifth section of the statute of February 8, 1791, entitled " an act for setting off debts, mutual demands and executions against each other," there could be no set-off of executions, unless in cases where the original causes of action, on which the judgments were founded, were of such a nature that the one might have been used as a set-off against the other, under the first section of the statute. He argued, that it was manifest from the language used in the fifth section, with

respect to executions for and against executors and administrators, that the provisions of the fifth section were intended to be confined to the same subject matter, as the provisions of the first section. Upon this point, he cited the following authorities. Prov. act of 5 George 3, cap. 129 ; Prov. Laws, 195 ; 1 Tidd's Prac. 601—608 ; 17 Mass. Rep. 178, *Adams* v. *Manning* ; 11 ditto, 140, *Walker* v. *Leighton et a.* ; 11 Johns. 70, *Sherman* v. *Crosby et a.* ; 1 Esp. N. P. C. 47, *Slipper* v. *Stidstone* ; 5 D. & E. 493, S. C. ; 6 ditto, 582, *French* v. *Andrade* ; 2 ditto, 32, *Fletcher* v. *Dyche* ; 2 Esp. N. P. C. 469, note ; 7 D. & E. 359, *George* v. *Clagett* ; 10 Johns. 250, *Locke* v. *Smith* ; Peake's cases, 197, *Puller* v. *Roe* ; 19 Johns. 342, *Ford* v. *Stuart* ; 18 ditto, 149, *Columbian Insurance Company* v. *Black* ; 2 ditto, 150, *Gordon* v. *Bowne* ; 17 ditto, 330, *Martin* v. *Williams* ; 8 ditto, 152, *Tuttle* v. *Bebee* ; 7 ditto, 21 ; 11 ditto, 538 ; 17 ditto, 284 ; 16 ditto, 54 ; 1 Wheaton, 235, and 5 ditto, 277.

He contended, that these cases showed that courts, in admitting or refusing a set-off, are to be governed by the equitable rights of the contending parties, and that a set-off is to be allowed or refused as it shall appear that the one or the other party is entitled to the greater equity.

2d, He farther contended, that in this state, a debtor has a right to prefer one creditor to another in disposing of his property, and therefore the assignment of the execution in this case, to the attorney, to satisfy his claims for fees and advances in the suit was valid. 10 Johns. 396, and 13 ditto, 9.

3d, It was also urged, on behalf of the defendant, that there was no equity on the side of the plaintiff, and that it would be contrary both to equity and justice, to permit the plaintiff to take the money and labor of the attorney and apply it to the payment of the debt of the client.

4th, One other ground, on which much reliance was placed, was, that the attorney had a lien for his fees and disbursements in the suit.

Shapley
*v.*
Bellows.

On these two last points, the following authorities were cited. 7 Mass. Rep. 140, *Goodenow* v. *Buttrick* ; 6 Cranch, 203, *Stewart* v. *Anderson* ; 13 Mass. Rep. 235, *Hallowell and Augusta Bank* v. *Howard* ; 12 Johns. 276, *Weston* v. *Barker* ; 1 ditto, 319, *Hendricks* v. *Judah* ; 3 Johnson's cases, 145, *Carpenter* v. *Butterfield*, and *Johnson* v. *Bloodgood* ; 1 ditto, 51, and *Prior* v. *Jacobs*, 1 ditto, 169 ; 2 Caine's Rep. 299 ; 4 B. & C. 547, *Carr* v. *Hinckliff* ; 2 Johns. cases, 258, *Wardwell* v. *Eden* ; 17 Johns. 284, *Prescott* v. *Hall* ; 16 Mass. Rep. 397 ; 12 ditto, 195 ; 8 ditto, 451 ; 2 Caine's Rep. 105 ; 2 Bl. Rep. 866 ; 3 Johns. 247 ; 8 ditto, 357 ; 1 H. Bl. 23, 217, and 657 ; 2 ditto, 440 and 587 ; 2 B. & P. 28 ; 11 Mass. Rep. 236 ; 13 ditto, 525 ; 8 Taunt. 526 ; 4 D. & E. 123 ; 6 ditto, 457, *Harvey Chase*, for the plaintiff.

RICHARDSON, C. J. delivered the opinion of the court.

It is contended, in this case, that the officer had no authority under the statute to set-off one execution against the other, because the judgment, on which the execution against the plaintiff issued, was founded upon a tort. But the language of the statute is, "that in all cases, where any persons have mutual executions against each other in their own rights—the sheriff, at the request of the creditor, upon either execution, shall set-off one execution against the other." The executions must be mutual ; that is, they must be between the same parties, and they must belong to the parties respectively in their own rights.

These are the only limitations which the statute prescribes to a set-off of executions. No allusion is made to the ground of action on which the judgments may have been founded. There are, without doubt, sound reasons for confining a set-off when used as a defence to an action to cases of *mutual debts*.

But where the demands of the parties have passed into judgments, and each has an execution in his own right against the other, the judgments are mutual debts, and

why, in order to determine the propriety of a set-off in such a case it should be necessary to look to the ground of action on which the judgments were founded, is not very obvious. The practice of setting off one judgment against another in court is not confined to judgments founded on mutual debts. 2 H. Bl. 826, *Thrustout* v. *Crofter* ; 1 ditto 23, *Schoole* v. *Noble* ; 1 ditto, 217, *Nunor* v. *Modigliani* ; 2 ditto, 440, *Vaughan* v. *Davies* ; 2 ditto, 587, *Dennie* v. *Elliot* ; 6 D. & E. 456, *Randle* v. *Fuller* ; 2 Tidd's Prac. 906–908 ; 4 D. & E. 123, *Mitchell* v. *Oldfield* ; 8 D. & E. 69, *Gloister* v. *Hewer* ; 4 Taunt. 635, *Mayor* v. *Knowler* ; 3 Caine's Rep. 190 ; 1 Johns. 144 ; 3 ditto, 247 ; 1 Johns. Ch. Rep. 91, *Simpson* v. *Hart* ; 14 Johns. Rep. 63, S. C. ; 1 Pick. 211, *Winslow* v. *Hathaway.*

It has been urged, that the language of the fifth section of the statute, with respect to executions for and against executors and administrators, shows that its provisions were intended to be confined to the same subject matter, as the provisions of the first section. This provision in the fifth section, is, " where any person as executor or administrator hath, or may have, an execution against another, who hath, or may have in his own right an execution against such executor or administrator, for a debt due from his testator or intestate, or where executors or administrators have execution against each other for mutual demands between their testators or intestates," the sheriff shall set-off one execution against the other. A very slight attention to the nature of this provision will show, that by " *debt due from his testator or intestate,*" and by " *mutual demands between their testators or intestates,*" judgments against the goods and estates of testators and intestates are intended. They are debts and demands, for which the parties have executions ; debts and demands which have passed into judgments. In the first section, the terms, "mutual debts," refer to claims of every description, which can be considered as *mutual debts,* whether they have passed into judgments or not.

Under that section, judgments are considered as debts, and may be used as a set-off. 1 Tidd's Prac. 604 ; and we are not aware of any case, in which it has been held, that it depends upon the nature of the action in which it may have been rendered, whether a judgment can be used as a set-off in such a case.

Had Jackson, therefore, brought an action of debt upon his judgment against Shapley, the latter might, it seems, have used his judgments against Jackson as a set-off.

The argument, then, which is to be drawn from any analogy, between the provisions of the two sections, instead of being against, is in fact, in favor of the right of the plaintiff, to have had the executions set-off against each other.

And we are of opinion, that mutual executions which parties have against each other in their own rights, may be set-off in all cases, whatever may have been the foundations of the judgments, on which they issued.

It has also been contended, on the part of the defendant, that the assignment, in this case, is to be protected against the set-off, on the ground that the assignee was a creditor, and that a debtor, in this state has a right to prefer one creditor to another.

But it is unnecessary to determine, in this case, how far a debtor has a right of preference in this respect, because we are clear, that the principle can never be held to extend so far as to enable a debtor, by assigning to his creditor a chose in action, or a judgment, to defeat a set-off, which exists against it. We have decided, that an assignee of a chose in action, his interest being merely equitable, is to stand in the place of the assignor, at the time of the assignment, and subject to every defence that might have been set up against the assignor. 3 N. H. Rep. 539, *Sanborn* v. *Little*. And we are not aware of any case, in which it has been held, that the circumstance that the assignee was a creditor of the assignor, was, in such a case, of any importance. Nor has any

equitable or legal ground been stated, on which the principle that a debtor has a right to prefer one creditor to another, can be applied, in a case like the one before us. We have, therefore, no hesitation in holding, that the fact that the assignee was the creditor of the assignor, was no bar to the plaintiff's right of set-off.

But it is further contended, that the attorney who prosecuted the suit had a lien upon the judgment for his fees and advances, which was paramount to the right of Shapley, to have the executions set-off against each other.

The lien of an attorney, upon a judgment, which has been recovered by his industry, and at his expense, for his fees and advances, is founded in strong equity and justice, and recognised very generally wherever the common law is known. 15 Johns. 405, *Martin* v. *Hawks* ; 11 Mass. Rep, 236, *Baker* v. *Cook* ; 2 N. H. Rep. 542.

And it is well settled, that where an attorney has a lien upon a judgment, that lien cannot be defeated by a set-off. 13 Mass. Rep. 525, *Dunklee* v. *Locke* ; 2 B. & P. 28, *Hall* v. *Ody* ; 2 B. & C. 800, *Harrison* v. *Bainbridge* ; 1 M. & S. 240 *Middleton* v. *Hill* ; 3 Caine's Rep. 190, note a.

It only remains then to be settled, whether an attorney who has obtained a judgment for his client, in this state, has a lien on that judgment, for his fees and advances ?

Lien, is a right to hold property till the party claiming the lien, is paid for the operation he performs. In its proper sense, it is a right which the law gives, and does not arise out of any contract whatever. But it is usual to speak of a lien by contract ; although in that case, it is more in the nature of an agreement for a pledge. When no lien exists at common law, it can only arise by contract, either express or implied.

By the common law, every person, who employs labor and skill upon the goods of another, at the request of the owner, without a special contract, is entitled to retain

the goods until a proper recompence is made. It is a principle of law and justice, that if a meritorious party can have no remedy but by the detention of a thing, he shall have lien to a reasonable extent.

A printer, employed to print a work in numbers has a lien upon any of the numbers not delivered for his general balance, due for printing the whole work. 3 M. & S. 168, *Blake* v. *Nicholson.*

A tailor, employed to make a suit of clothes, has a lien for the whole price on every part of the suit. 3 M. & S. 169.

By the principles of the common law, a vender of goods has lien upon them so long as they remain in his possession and the vendee neglects to pay the price according to the conditions of the sale. 1 H. Bl. 363 ; 2 Starkie's N. P. C. 337.

An innkeeper, has a lien upon the goods of his guest in his possession, for the price of lodging and entertainment. 3 B. & A. 283, *Thompson* v. *Lacy.*

So a shipwright, has a lien on a ship for repairs. 4 B. & A. 341, *Franklin* v. *Hosier.*

An insurance broker, who receives premiums and pays losses has a lien on the policies and abandonments in his hands for a general balance against the underwriter. 3 Pick. 424, *Moody* v. *Webster.*

But he who finds property which has been lost, and voluntarily puts himself to trouble and expense to preserve the property and to find the owner, has no lien. 2 H. Bl. 254, *Nicholson* v. *Chapman* ; 2 W. Bl. 1117, *Binstead* v. *Bush.*

These cases show the nature of a lien, the extent to which the principle has been applied and its limitations. Nothing can be more just and reasonable. The tailor, who has made my cloth into a garment at my request, and thus increased the value of my property by his labor and ingenuity, surely has as just a claim to the possession of the garment until he receives payment as I can have.

In all the cases which we have just cited, the principle has been applied with equal justice and equity ; and we entertain no doubt that to this extent the law of lien has been adopted in this state and is now in force among us.

But the question in this case is, has the law giving an attorney a lien for his fees and disbursements upon the judgment he has obtained for his client been adopted in this state ?   The nature and extent of this lien was stated and explained in *Grant* v. *Hazeltine*, 2 N. H. Rep. 541, but the question whether such a lien exists in this state was not decided.

It seems to us, that a lien in such a case is founded in as clear justice as in any other case whatever.   It is reasonable and proper that an attorney, by whose industry and labor and at whose expense a judgment has been obtained for his client, should have an interest in that judgment, which the law will regard and protect.

There is a general understanding between attornies and their clients, that the former shall retain their fees and disbursements out of the sum that may be recovered of the opposite party.   And it is not uncommon that attornies commence actions for poor people and make advances of money necessary to the prosecution of the suit upon the credit of the cause.   Thus a person in indigent circumstances is enabled to obtain justice in cases where, without such aid, he would be unable to enforce a just claim.   And we have no hesitation in adopting the language of Lord Kenyon, on this subject, and saying "that the convenience, good sense, and justice of the thing require" that attornies, should have a lien, upon the judgments they obtain for their clients, and that the attorney in this case had a lien upon the judgment which he obtained against Shapley.

But the lien does not extend beyond the amount of the fees and disbursements in the cause, in which the judgment against Shapley was obtained.   What that amount was, does not appear by the case stated.   Before any

judgment however can be given in this case, that amount
must be ascertained.  For if the fees and disbursements
of the attorney amounted to a sum equal to the judgment
this suit cannot be maintained.  But if the lien did
not cover the whole judgment, the officer was guilty of a
breach of duty in not making a set-off of the sum not cov-
ered by the lien, and the plaintiff will be entitled to judg-
ment.