Hillsborough
No. 80-349

CATAMOUNT CONSTRUCTION, INC.

v.

TOWN OF MILFORD

September 16, 1981

*Wiggin & Nourie*, of Manchester, and *Snyder, Tepper & Berlin*, of Boston, Massachusetts (*Gary Ellis Hicks & a.* on the brief and *Mr. Hicks* orally), for the plaintiff.

*Patrick J. Enright*, of Milford, by brief and orally, for the defendant.

BROCK, J. In this petition for declaratory judgment (RSA 491:22) the plaintiff, Catamount Construction, Inc., seeks a judicial determination of its obligations under a construction contract with the defendant, Town of Milford. Specifically, the issue is which party must reimburse the Boston & Maine Railroad for the cost of a railroad crossing associated with the construction of a wastewater treatment plant being built by the plaintiff. The Superior Court (*Goode*, J.) ruled that the plaintiff was obligated to pay the costs of the railroad crossing, and the plaintiff then filed its notice of appeal in this court. For the reasons which follow, we reverse.

On July 19, 1979, the parties entered into a construction contract which called for the construction of a wastewater treatment facility and pumping station in Milford. Because of the location of the proposed plant, the construction of a railroad crossing was contemplated, and the contract, therefore, required the plaintiff to "furnish all materials, labor, tools and equipment necessary to install the sewer pipe under the railroad tracks and construct the rubber track" railroad crossing. The trial court found that both parties were aware that the Boston & Maine Railroad would require that its personnel perform the required track work. Moreover, the contract called for the plaintiff to cooperate with the railroad and perform the crossing work "in a manner fully satisfactory" to the railroad.

The plaintiff requested the railroad to install the crossing, and the railroad agreed on the condition that it be paid a $25,000 deposit toward actual construction costs. That amount exceeded the contract allowance of $3,200 for the crossing. The plaintiff therefore requested that the defendant town assume all costs for the crossing in excess of that amount. The town took the position that the stated allowance of $3,200 was the total it was required to pay under the contract for the crossing, and it denied the plaintiff's request. Following that decision, the plaintiff filed its petition for a declaratory judgment in the superior court.

■■ The proper interpretation of contracts is a question of law. *Murphy v. Doll-Mar, Inc.*, 120 N.H. 610, 611, 419 A.2d 1106, 1108 (1980). "In reaching the proper interpretation we require that the words and phrases used by the parties be given their common

meaning . . . and this court will determine the meaning of the contract based upon the meaning that would be attached to it by a reasonable person." *Id.* at 611–12, 419 A.2d at 1108. (Citation omitted.) Applying that rule to the facts of this case can result in only one conclusion: the defendant town must bear the entire cost of the railroad crossing.

The pertinent portion of the "Stated Allowances" section of the contract provides:

"PART 1 GENERAL

1.01 Stated allowances shall be as follows:

| ITEM | ALLOWANCE DOLLARS |
|------|-------------------|

. . .

H. Railroad Personnel Expenses          $3,200.00

1. Stated allowance for railroad work shall be for personnel, inspection *and other items of expense billed to the Contractor by the railroads* in the normal course of constructing the work on or under railroad property, but will not be used to reimburse the Contractor for expenses incurred by his own carelessness or by unauthorized work.

1.02 Stated allowances shall be paid as described in the PROPOSAL and as in SECTION 34 of the GENERAL CONDITIONS, also Railroad Work shall be paid as outlined in SECTION 02850 and Electrical Work shall be paid as outlined in SECTION 16010.

1.03 *The dollar amount stated is only approximate. If the Contractor's actual cost as billed is greater or less than the quoted allowances in 1.01 above, appropriate adjustments will be made and the Contractor shall be reimbursed if necessary.*

END OF SECTION 01020"

(Emphasis added.)

The town contends that the "Stated Allowances" section only contemplated the expenses associated with railroad inspectors and railroad flagmen, who were needed to control traffic. We cannot accept such an interpretation because paragraph "H.1" clearly states that the allowance is for "personnel, inspection and *other items of expense . . .*" for work performed by the railroad in the normal course of construction. In addition, section 1.03 clearly

provides that the plaintiff shall be reimbursed if actual costs are greater than the stated allowance.

We can find no portion of the contract that can reasonably be interpreted as supporting the town's position. Indeed, the town's position is made even more untenable when the following contract provision is considered:

> "4.02 Charges to the Contractor by the railroad for review, inspection, flagmen or *any other required activity* by the railroad for the proposed construction will be paid to the Contractor as a stated allowance in Section 01020. *Allowances are approximate and the actual amount to be paid may be more or less but shall match the actual amount paid to the railroad provided that the Contractor shall record the actual amounts paid to the railroad,* and at the end of each month submit the total of charges paid for that month, in 5 copies to the Engineer."

(Emphasis added.) The phrase "any other required activity" is used without limitation; it encompasses all costs associated with work that the railroad determines it must perform.

The contract provisions are clear. All costs billed to the plaintiff by the Boston & Maine Railroad for construction of the crossing in question must be paid by the defendant.

*So ordered; judgment below vacated.*

DOUGLAS and BATCHELDER, JJ., did not sit; BOIS, J., dissented; the others concurred.

BOIS, J., dissenting: I disagree with the majority's conclusion that "no portion of the contract . . . can reasonably be interpreted as supporting the town's position," and, therefore, would reach a different result.

Section 02850 of the contract, entitled "Work on Railroad Property", reads in pertinent part:

> "PART 1—SCOPE
>
> 1.01 The Contractor shall furnish all materials, labor, tools and equipment necessary to install the sewer pipe under the railway tracks and construct the rubber track crossing at the location shown on the Drawings."

As noted by the majority, there is no doubt that "the contract,

therefore, required the *plaintiff to 'furnish all materials, labor, tools and equipment* necessary to install the sewer pipe under the railroad tracks and construct the rubber track' railroad crossing." (Emphasis supplied.)

> "1.03 All requirements of the Railroad shall be strictly adhered to and if there be any conflict between these specifications and the requirements of the Railroad, the requirements of the Railroad shall apply.
>
> PART 2—GENERAL RAILROAD REQUIREMENTS
>
> . . .
>
> 2.04 The Railroad may require flagging or inspection personnel and prior to start of any work at Railroad, the Contractor shall submit a deposit in the amount required by the Railroad."

The contract contained further provisions for "stated allowances." Section 00231 contains the following language:

> "GC-34. STATED ALLOWANCES
>
> The Contractor shall include in his proposal any cash allowances stated in the Supplementary Conditions."

The trial court found that:

> "Clearly, from the testimony, and from the language of Section GC-34 itself, a stated allowance represents an amount of money allowed by the contractor for an item in the contract over which the owner [i.e. the Town of Milford] will have a final choice. If the owner ultimately selects an item which costs more than what the contractor 'allowed,' the owner is then required to pay the difference; similarly, if the owner selects an item which costs less than that 'allowed,' the owner is credited with that difference. . . .
>
> The contention relied on by the plaintiff that this expense is reimbursable as an 'allowance' would necessarily suggest that the defendant Town of Milford has an opportunity to select either a more expensive or less expensive crossing than that allowed for by the contract."

This, of course, would be in direct contravention of Part 1—Scope 1.03 which designates the railroad as the ultimate controlling authority for work performed on its property.

Section 01020 "STATED ALLOWANCES" in pertinent part provides:

"PART 1 GENERAL

1.01 Stated allowances shall be as follows:

| ITEM | ALLOWANCE DOLLARS |
|---|---|
| ... | |
| H. Railroad Personnel Expenses | $3,200.00 |

1. Stated allowance for railroad work shall be for personnel, inspection and other items of expense billed to the Contractor by the railroads in the normal course of constructing the work on or under railroad property, but will not be used to reimburse the Contractor for expenses incurred by his own carelessness or by unauthorized work."

The majority rejects the town's contention that the "STATED ALLOWANCES" section of the contract only contemplated expenses for railroad inspectors and railroad flagmen. The majority quotes and emphasizes Part 1.01 H. and 1 of the "STATED ALLOWANCES" portion of the contract, which provides that "Railroad *Personnel* Expenses" (emphasis added) shall be in the amount of $3,200 and that "[s]tated allowance for railroad work shall be for personnel, inspection *and other items of expense billed to the Contractor by the railroads* in the normal course of constructing the work on or under railroad property. . . ." They choose to ignore the further explanation of the expenditures contained in section 00141 of the contract which provides in pertinent part:

"*Plus* the actual cost of stated allowances listed hereinafter for which prices are estimated for the purpose of bid comparison and for which payment will be in accordance with Section 34 of the General Conditions.

. . .

F. Railroad crossing

Cost to be paid to Railroad Company *for issuing permits and usage of railroad personnel* ($3,200.00)

(Emphasis added.)"

Their reliance on section 4.02 under Part 4 "Measurement and Payment," in my opinion, is misplaced because this section again deals only with *stated* allowances.

The majority concludes that the phrase "other items of expense" embraces the *entire* cost of constructing the crossing. They cannot and do not explain away the responsibility of the contractor to furnish all materials, labor, tools and equipment imposed by the terms of the contract, nor can they find such clear and concise language but in Part 1—Scope 1.01.

Accordingly, I conclude, as did the trial court, that the contract language is clear and unambiguous, and that the parties contemplated the inclusion of the cost of constructing the crossing and that "[s]uch a strained and tortured interpretation" as proposed by the plaintiff "has no basis under the terms of this contract."

I further wholeheartedly agree with the lower court, which stated:

> "This [c]ourt is not at liberty to revise, modify o[r] distort an agreement under the guise of professing to construe it, and it has no right to make a different contract from that actually entered into by the parties. Neither is this [c]ourt in a position to compensate for the indiscretions of a party to this contract, and thus cannot make for the parties a better or more equitable agreement than they themselves have been satisfied to enter into."

*See Mills v. Nashua Federal Savings and Loan Ass'n*, 121 N.H. 722, 433 A.2d 1312 (1981).