Hillsborough
No. 81-184
No. 81-189

### R. ZOPPO CO., INC.

v.

### CITY OF MANCHESTER

### CITY OF MANCHESTER

v.

### HOWARD, NEEDLES, TAMMEN & BERGENDOFF

December 29, 1982

1110

*James A. Connor*, of Manchester, by brief and orally, for R. Zoppo Co., Inc.

*Stark & Peltonen P.A.*, of Manchester (*Rodney L. Stark* on the brief and orally), for Howard, Needles, Tammen & Bergendoff.

*Elmer T. Bourque*, city solicitor (*James A. Manning*, assistant city solicitor, on the brief and orally), for the City of Manchester.

BATCHELDER, J. This litigation arises from the construction of an enclosure of the Ray Brook in Manchester. The City of Manchester (city) entered into a contract with the architectural-engineering firm of Howard, Needles, Tammen & Bergendoff (Howard, Needles) pursuant to which the firm was to prepare final plans, estimates of the cost of construction, specifications and contract documents for the Ray Brook project, as well as to provide consultation and advice to the city during construction. The city solicited bids based on the specifications and drawings. The R. Zoppo Company (Zoppo) submitted the lowest bid ($689,351.10) and contracted with the city to do the work. Shortly after the beginning of construction, a dispute arose concerning the use of steel cofferdamming during construction.

A cofferdam is a "temporary watertight enclosure . . . from which the water is pumped to expose the bottom of a body of water and permit construction . . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 439 (1961). Zoppo took the position that it was required to provide steel cofferdamming only where the specification drawings indicated it should be used. The city, however, maintained

that the entire Ray Brook enclosure must be built under the protection of a continuous steel cofferdam. It is not disputed that complete cofferdamming would provide greater protection against storms as well as protecting nearby residential buildings from settlement during sudden loss of water from the soil, thus reducing the city's exposure to suit from such hazards. Because the cofferdamming was needed only to protect against these hazards during construction, it was removed at the completion of construction.

The dispute was submitted to the architect-engineer (Howard, Needles) which, pursuant to the construction contract, had final authority to resolve disputes regarding the meaning of the specifications. Howard, Needles agreed with the city that continuous cofferdamming was required. Thus Zoppo was required to provide continuous steel cofferdamming or have its bond forfeited. Zoppo chose the former course and proceeded with the contract, albeit under protest. Upon completion of the project, Zoppo submitted a claim for extra costs, allegedly due to the requirement of continuous steel cofferdamming, which the city denied.

Zoppo then brought suit against the city for damages, alleging that the city was unjustly enriched by the use of continuous steel cofferdamming during the construction of the Ray Brook project because this construction technique was neither included in the specifications nor contemplated by Zoppo when submitting its bid. The city asserted a third-party claim against Howard, Needles, alleging that the firm was obligated by contract to indemnify the city for claims such as that made by Zoppo. All the claims were heard before a Master (*Mayland H. Morse*, Esq.), who made the following recommendations: (1) Zoppo was entitled to quantum meruit damages from the city in the amount of $104,600 for additional benefits conferred on the city; (2) Howard, Needles was liable for the damages assessed against the city; and (3) Howard, Needles' claim against the city for additional compensation for assistance provided in regard to the city's defense of the Zoppo suit was denied. These recommendations were approved by the Trial Judge (*Dalianis*, J.). The city and Howard, Needles appealed.

Before us are the following issues: (1) whether the master erred in finding that Zoppo was entitled to damages on the theory of quantum meruit; (2) whether the master erred in his calculation of damages; and (3) whether the master was correct when he held that the city should be indemnified by Howard, Needles for the judgment against the city. For the reasons set forth, we affirm the master's report.

■ A trial court may require an individual to make restitution for unjust enrichment if he has received a benefit which would be unconscionable for him to retain. *Petrie-Clemons v. Butterfield*, 122 N.H. 120, 127, 441 A.2d 1167, 1171 (1982). A plaintiff is entitled to restitution if he shows that there was unjust enrichment either through wrongful acts or passive acceptance of a benefit that would be unconscionable to permit the defendant to retain. *Cohen v. Frank Developers, Inc.*, 118 N.H. 512, 518, 389 A.2d 933, 937 (1978). Recovery under the doctrine of restitution does not always require an express contract. *Presby v. Bethlehem Village District*, 120 N.H. 493, 495, 416 A.2d 1382, 1383 (1980).

■■ A trial court must determine whether the facts and equities of a particular case warranted a remedy in restitution. *Presby v. Bethlehem Village District, id.* at 495–96, 416 A.2d at 1384. This court will not substitute its judgment for that of a trial court, unless the court's rulings and findings are unsupported by the evidence or are erroneous as a matter of law. *Gauthier v. Robinson*, 122 N.H. 365, 369, 444 A.2d 564, 566 (1982).

■ In the instant case, the master found that Zoppo was misled by a deficiency in the plans and specifications, and that Zoppo was justified in its protest against the subsequent continuous coffer-damming requirement. He further found that Zoppo's work in providing cofferdamming in excess of those areas clearly specified in the drawings, or in areas where the condition of land did not warrant such extra protection, was compensable on the theory of unjust enrichment. Review of the record reveals that the master's findings were supported by the evidence.

The next issue raised is that the master erred in his method of measuring damages because recovery in quantum meruit is based upon the unjust enrichment of the defendant and not upon the cost to the plaintiff.

■■ Under the law of this State, when a court assesses damages in an unjust enrichment case, the focus is not upon the cost to the plaintiff, but rather it is upon the value of what was actually received by the defendants. *Moore v. Knight Foundations, Inc.*, 122 N.H. 334, 335, 444 A.2d 546, 547 (1982); *Martin v. Phillips*, 122 N.H. 34, 38, 440 A.2d 1124, 1126 (1982). Nevertheless, in some cases, it may be difficult to ascertain the value received by a defendant, such as the case at hand where the benefit conferred upon the city was the additional protection of continuous steel cofferdamming which reduced the city's liability for the potential hazards to the properties near the Ray Brook construction. In these cases, the evidence of the

plaintiff's expenditures may be considered as circumstantial evidence of the value of the benefit conferred upon a defendant. *Howard v. Green*, 555 F.2d 178, 183 n.3 (8th Cir. 1978); *cf. Prager v. New Jersey Fidelity & Plate Glass Ins. Co.*, 245 N.Y. 1, 4, 156 N.E. 76, 77 (1927) (in quantum meruit claim, lawyer's estimate of his own services is "high evidence" of value to the client).

 In reviewing damage awards, this court considers the evidence in the light most favorable to the prevailing party. *Petrie-Clemons v. Butterfield*, 122 N.H. at 124, 441 A.2d at 1170; *Martin v. Phillips*, 122 N.H. at 37, 440 A.2d at 1126. Although there was no direct evidence of the value of the steel cofferdamming to the city, after review of the record, we do not find that the master's award of $104,600 was clearly erroneous. "[T]he law does not require 'mathematical certainty' in computing damages." *Martin v. Phillips*, 122 N.H. at 37, 440 A.2d at 1126 (quoting *M. W. Goodell Constr. Co., Inc. v. Monadnock Skating Club, Inc.*, 121 N.H. 320, 323, 429 A.2d 329, 331 (1981)). Of course, as we have often said, it would facilitate our review if masters would itemize damages with more particularity. *Id.* at 324, 429 A.2d at 331.

The master held that Howard, Needles should indemnify the city because he found that Zoppo's successful claim against the city was attributable to the "Architect/Engineer's own causal failure in the preparation and content of the specification." The contract between the city and Howard, Needles provided that the architect-engineer would hold the city harmless for all suits and claims arising out of or in consequence of the acts or failure to act of the architect-engineer.

 In interpreting indemnity provisions, this court will apply the same rules as are used to interpret contracts generally. *Commercial Union Assurance Co. v. Brown Co.*, 120 N.H. 620, 623, 419 A.2d 1111, 1113 (1980). In doing so, we consider the written agreement, all its provisions, its subject matter, the situation of the parties at the time the agreement was entered into, and the object intended. *Id.* at 623, 419 A.2d at 1113. Considering the fact that Howard, Needles and the city contracted to have the firm provide plans, specifications and contract documents for the Ray Brook project, as well as the firm's relative expertise in these matters, we find that the master's recommendations were reasonable. Accordingly, we affirm.

*Affirmed.*

All concurred.