Auburn District Court
No. 84-363

### RICHARD IACOMINI, d/b/a MOTOR CRAFT OF RAYMOND

v.

### LIBERTY MUTUAL INSURANCE COMPANY

August 7, 1985

74

*James A. Connor*, of Manchester, by brief and orally, for the plaintiff.

*Kelliher & Clougherty*, of Manchester (*Thomas W. Kelliher* on the brief and orally), for the defendant.

DOUGLAS, J. The issue presented in this case is whether a party may subject an owner's interest in an automobile to a lien for repair and storage charges, without the owner's knowledge, acquiescence, or consent. We hold that no common law or statutory lien may be created under such circumstances, but that equitable relief for unjust enrichment may be appropriate.

On August 10, 1983, the plaintiff, Richard Iacomini, d/b/a Motor Craft of Raymond, contracted with one Theodore Zadlo for the tow-

ing, storage, and repair of a 1977 Mercedes Benz 450-SL. Mr. Zadlo represented himself to be the owner of the car and presented the plaintiff with a New Hampshire registration certificate for the car bearing Zadlo's name. In fact, the car did not belong to Mr. Zadlo but had been stolen in 1981 from a car lot in New Jersey. The defendant, Liberty Mutual Insurance Company, had earlier fulfilled its policy obligations by reimbursing the owner of the stolen car $22,000. It thereby had gained title to the vehicle.

Extensive damage was done to the car after its theft, and Zadlo brought the car to Mr. Iacomini for the purpose of repairing this damage. The plaintiff kept the car at his garage, where he disassembled it in order to give a repair estimate. He apparently never fully reassembled it. Mr. Zadlo periodically returned to the plaintiff's garage to check the status of the repair work.

In October 1983, the Raymond Police Department notified the plaintiff that the Mercedes was a stolen car and also notified Liberty Mutual of the location of the car. Mr. Iacomini at that point moved the vehicle from the lot to the inside of his garage where it remained for the next several months. Liberty Mutual contacted the plaintiff soon after it learned of the vehicle's location to arrange its pick-up. The plaintiff refused to relinquish the car until he had been reimbursed for repair and storage fees.

On December 12, 1983, Liberty Mutual instituted a replevin action in the Manchester District Court seeking return of the car. The action was dismissed for want of jurisdiction, whereupon Liberty Mutual filed the same action in the Auburn District Court on February 22, 1984. On the basis of facts presented at a hearing on April 3, 1984, in the replevin action, the Court (*Korbey*, J.) found that the plaintiff (defendant in that action) did not have a valid statutory lien since the vehicle was brought to the plaintiff by one other than the owner. The court then ordered Mr. Iacomini to make the vehicle available forthwith to Liberty Mutual with the proviso that Liberty Mutual retain the vehicle in its possession and ownership for a period of at least ninety days in order to allow Mr. Iacomini the opportunity to file an action against Liberty Mutual relating to repairs.

The plaintiff petitioned for an *ex parte* attachment on April 16, 1984, claiming approximately $10,000, most of which was for storage fees. On or about July 3, 1984, the same court entered judgment in Liberty Mutual's favor finding that "the plaintiff was not authorized or instructed by the legal or equitable owner of the automobile to perform any repair work on the vehicle." On either the day before, or the day of, the hearing, July 3, 1984, the plaintiff filed a Motion to Specify Claim to include an action for unjust enrichment.

Liberty Mutual objected to the plaintiff's attempt to amend his cause of action at that date, and the court denied the motion. It also denied the plaintiff's requests for findings that the value of the car had been enhanced by the plaintiff and that denial of the plaintiff's claim would result in unjust enrichment. This appeal followed.

■ The law generally recognizes three types of liens: statutory, common law, and equitable. 51 AM. JUR. 2d *Liens* § 4, at 146 (1970). Statutory liens for motor vehicle storage and repair are governed by RSA 450:1 and RSA 450:2. These statutes provide as follows:

> "For Storage. Any person who maintains a public garage, public or private airport or hangar or trailer court for the parking, storage or care of motor vehicles or aircraft or house trailers brought to his premises or placed in his care *by or with the consent of the legal or equitable owner* shall have a lien upon said motor vehicle or aircraft or house trailer, so long as the same shall remain in his possession, for proper charges due him for the parking, storage or care of the same."

RSA 450:1 (emphasis added).

> "For Labor. Any person who shall, by himself or others, perform labor, furnish materials, or expend money, in repairing, refitting or equipping any motor vehicle or aircraft, *under a contract expressed or implied with the legal or equitable owner*, shall have a lien upon such motor vehicle or aircraft, so long as the same shall remain in his possession, until the charges for such repairs, materials, or accessories, or money so used or expended have been paid."

RSA 450:2 (emphasis added).

■■ "[I]n the case of a statutory lien, the specified requisites must be strictly observed." *Manchester Sav. &c. Ass'n v. Letendre*, 103 N.H. 64, 68, 164 A.2d 568, 572 (1960). By the language of the statute, no lien may be created on an automobile as to the owner without the owner's knowledge, acquiescence, or consent. Under the present circumstances, where the repairman contracted with the possessor of a stolen vehicle for the repair of the car, it is difficult to imagine how the owner could have consented to, or acquiesced in, the repair of the vehicle. The owner in this case had no idea even where the car was located. Whether the plaintiff was reasonable in believing Mr. Zadlo to be the true owner is irrelevant to whether a contract existed between the plaintiff and Liberty Mutual.

■ Prior to the passage of a statute on the subject of mechanics' liens (Laws 1925, c. 90), "there existed here and elsewhere a lien at common law in favor of anyone who upon request expended labor and materials upon another's property." *Hiltz v. Gould*, 99 N.H. 85, 86, 105 A.2d 48, 50 (1954) (citing *Shapley v. Bellows*, 4 N.H. 347, 353 (1828)). The statutory lien does not supplant, but supplements, the common law mechanics lien, so that we must also look to the rights of the plaintiff under the common law. *Hiltz v. Gould, supra* at 86, 105 A.2d at 50; *Peavy's Serv. Ctr., Inc. v. Associates Fin. Serv. Co. Inc.*, 335 So.2d 169, 170–71 (Ala. Civ. App. 1976).

■ As with the statutory liens, common law liens on property for repair costs could be created only by the owner or by a person authorized by him. "By common law, every person, who employs labor and skill upon the goods of another, *at the request of the owner*, without a special contract, is entitled to retain the goods until a proper recompence is made." *Shapley v. Bellows, supra* at 353–54 (emphasis added); *Sargent v. Usher*, 55 N.H. 287, 291 (1875) (opinion of Cushing, C.J.). New Hampshire common law is consistent with the common law of other jurisdictions which also require the owner's consent or acquiescence before a lien may be established on the property of the owner. *See, e.g., Small v. Robinson*, 69 Me. 425 (1879); *Gilson v. Gwinn*, 107 Mass. 126 (1871); *Fitch & Gilbert v. Newberry & Goodell*, 1 Doug. (Mich.) 1 (1843).

■ The necessity of the owner's consent is consistent with the contractual relationship between the lienor and the lienee which underlies the establishment of a lien. *Kalio Universal, Inc. v. B.A.M. Inc.*, 95 N.J. Super. 393, 398, 231 A.2d 376, 379 (1967); *see Hiltz v. Gould, supra* at 86, 105 A.2d at 50 (common law lien exists in favor of anyone who *upon request* expends labor and materials upon property of another). As discussed previously, no such contractual relationship may be inferred where a possessor of a stolen vehicle turns it over to a garageman for repairs; accordingly, no lien is created against the owner. This is the correct result under the common law even though hardships may result to a good faith repairman. "There are many hard cases . . . of honest and innocent persons, who have been obliged to surrender goods to the true owners without remedy . . . . But these are hazards to which persons in business are continually exposed." *Sargent v. Usher, supra* at 294 (opinion of Smith, J.). Of course, the repairman would always have a cause of action against the third party who contracted with him for repairs without the owner's consent.

■ Although the facts of this case do not establish either a statutory or a common law lien, the plaintiff may be entitled to res-

78

titution under principles of equity. An equitable lien may be imposed to prevent unjust enrichment in an owner whose property was improved, for the increased value of the property. D. DOBBS, REMEDIES § 4.3, at 249 (1973); *Caldwell v. Armstrong*, 342 F.2d 485, 490 (10th Cir. 1965); *American Co. v. Green Shield*, 145 Colo. 188, 195, 358 P.2d 473, 477 (1960). "In the absence of a contractual agreement, a trial court may require an individual to make restitution for unjust enrichment if he has received a benefit which would be unconscionable to retain." *Petrie-Clemons v. Butterfield*, 122 N.H. 120, 127, 441 A.2d 1167, 1171 (1982). The trial court must determine whether the facts and equities of a particular case warrant such a remedy. *R. Zoppo Co., Inc. v. City of Manchester*, 122 N.H. 1109, 1113, 453 A.2d 1311, 1314 (1982).

 In the present case, the trial court granted Liberty Mutual's writ of replevin sometime after April 3, 1984. The court's order required, however, that Liberty Mutual retain the vehicle for at least ninety days to allow Mr. Iacomini to file an action against Liberty Mutual relating to repairs. On July 2 or July 3, 1984, the plaintiff filed a "Motion to Specify Claim" for unjust enrichment. Liberty Mutual objected, arguing that the plaintiff should not be allowed to amend his cause of action at that date, and the court denied the plaintiff's motion. Because the court specifically gave Mr. Iacomini ninety days to file an action against Liberty Mutual, we conclude that the court abused its discretion in denying the plaintiff's motion, and remand the case to the district court for a new trial. The fact that the court made specific findings regarding unjust enrichment does not change this result, since the plaintiff may not have presented evidence on this issue because his motion had been denied.

 We here note that "when a court assesses damages in an unjust enrichment case, the focus is not upon the cost to the plaintiff, but rather it is upon the value of what was actually received by the defendants." *R. Zoppo, supra* at 1113, 453 A.2d at 1314. In this case, the damages would thus be the difference between the value of the vehicle before and after the plaintiff worked on it, regardless of its worth when stolen.

*Reversed and remanded.*

All concurred.