**OCOR PRODUCTS CORPORATION**

v.

**WALT DISNEY PRODUCTIONS, INC.**

Civ. No. 87–66–D.

United States District Court,
D. New Hampshire.

Feb. 8, 1988.

James E. Higgins, Manchester, N.H., for plaintiff.

Carol Komissaroff, New York City, Irvin D. Gordon, Concord, N.H., for defendant.

## ORDER

DEVINE, Chief Judge.

In this diversity action,[1] plaintiff Ocor Products Corporation ("Ocor") claims that defendant Walt Disney Productions, Inc. ("Disney"), breached a contract between the parties and was unjustly enriched when Disney had a Hong Kong manufacturer wrongfully duplicate an Ocor-manufactured product which Disney then purchased at less cost than it had paid for the Ocor product. The action is presently before the Court on plaintiff's motion for partial summary judgment and defendant's objection thereto, and on defendant's cross-motion for summary judgment and plaintiff's objection thereto. Rule 56(a), (b), Fed.R.Civ. P. The Court resolves the motions on the

documents as filed. *See* Rule 11(g), Rules of the United States District Court for the District of New Hampshire.

### Factual Background

Ocor, through its PAK 2000 division, manufactures polyethylene bags. Since 1976 plaintiff has been the exclusive importer of a bag with a plastic handle known as the "Model Oscar", designed by a French corporation, Decomatic, S.A. Since 1982 Ocor has held an exclusive license to manufacture and distribute the Model Oscar bag in the United States. Roessiger Affidavit ¶ 6. The Model Oscar handle is a heavy-duty handle with a snap-style closure across the top of the bag, and the bag is typically resold at retail as a durable shopping bag. Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment ("Plaintiff's Memorandum") at 3–4 and Exhibit D.

In 1981 David Brown, a sales representative for PAK 2000, solicited an order from Disney for Model Oscar bags to be sold at the soon-to-be-opened EPCOT Center. Brown Deposition at 7. The parties agreed to the purchase and sale of 300,000 bags. Disney issued purchase orders (called "merchandise orders") on December 9, 1981, January 13, 1982, and February 24, 1982, to purchase the bags in lots of 100,-000. Huff Affidavit, Exhibit E. The bags were shipped by plaintiff and accepted by defendant.

On December 20, 1983, Disney issued a merchandise order for 100,000 additional bags. Bryant Deposition, Exhibit 5. On January 3, 1984, the day Ocor received the order, it issued an acknowledgment that divided the order into two shipments, each of 50,000 bags ("PAK 2000 document"). Upon receiving the PAK 2000 document, Danelle Hickman, an assistant buyer for Disney, signed it and returned a copy to Ocor. On the back of the document was a list of conditions of sale and delivery. Pro-

---

**1.** Plaintiff asserts jurisdiction under 28 U.S.C. § 1332, the parties being diverse and the amount in controversy exceeding $10,000. Ocor is a New Hampshire corporation with its princi-pal place of business in New Hampshire; defendant is a Delaware corporation with its principal place of business in Buena Vista, California.

vision K (or "§ K"), which is the section in dispute here, stated:

All designs which may be submitted in whatever form to the customer, or copies or derivatives of such designs, remain the exclusive property of PAK 2000. It is prohibited to reproduce, use, or remit to third parties such designs, artwork, etc., without our express written consent.

Bryant Deposition, Exhibit 4. Disney sent a revised merchandise order for the first shipment of 50,000 bags on January 11, 1984, *id.* at Exhibit 7, and for the second shipment on July 3, 1984, Huff Affidavit, Exhibit J. Plaintiff sent its second acknowledgment form to Disney on July 3, 1984, which contained a Provision K identical to the one set forth above. Bryant Deposition, Exhibit 8. Ms. Hickman also signed and returned this form. *Id.*

Prior to the execution of the PAK 2000 documents, Disney had sent a sample of the PAK 2000 bag to Canasa Trading Group ("Canasa"), a Disney subsidiary, to have Canasa search for a foreign supplier of a bag of similar design at less cost. Bryant Affidavit at 28; Defendant's Admission No. 7 & 8. The sample was subsequently submitted to Kutex International ("Kutex"), a Hong Kong agent. Kutex in turn arranged to have a similar bag designed by a Hong Kong manufacturer, a bag which eventually replaced the PAK 2000 Model Oscar bag at EPCOT Center.[2] Bryant Deposition, Exhibits 9–25.

Disney placed its first order for the replacement bag on August 14, 1984. Supplement to Gaines Deposition, Exhibit H, at 73. The replacement bag has different artwork than the PAK 2000 bag, but has essentially the same handle as the Model Oscar handle. Plaintiff's Memorandum,

Exhibit E. Plaintiff alleges that defendant's actions constitute a breach of Provision K of the PAK 2000 form and that defendant is liable for plaintiff's lost profits or, in the alternative, for unjust enrichment.

Plaintiff has moved for partial summary judgment on the issue of liability,[3] and defendant has cross-moved for summary judgment. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. In considering the motions for summary judgment, the Court must view the record in the light most favorable to the opposing party, according the opposing party all beneficial inferences discernable from the evidence. *Merrill v. County Stores*, 669 F.Supp. 1164, 1167 (D.N.H.1987). When both motions demonstrate basic agreement regarding the relevant legal theories and underlying material facts, cross-motions may be evidence of a lack of genuine factual dispute. *Id.*

The Court considers initially whether the PAK 2000 forms, signed by Danelle Hickman, an assistant buyer for Disney, bind Disney to the § K provision. It appears that the exchange of purchase orders with different terms is a classic example of the "battle of the forms" under the Uniform Commercial Code ("UCC") § 2–207, a section which precludes new terms in an acceptance or confirmation from becoming a part of the contract if the terms "materially alter" the contract.[4] New Hampshire

2. The record does not establish the exact date on which the Ocor bag was actually sent to Hong Kong. A telegram dated January 10, 1983, from Canasa to Kutex asked Kutex to advise Canasa whether a quoted price was to mold the "exact same handle" as represented in the sample, a provision which presumably refers to the PAK 2000 Model Oscar handle. Gaines Deposition at 66. Bryant Deposition, Exhibit 9. In any event, it is clear from subsequent correspondence that the PAK 2000 bag was submitted to a manufacturer prior to January 1984. *See* Bryant Deposition, Exhibits 9–13.

3. Plaintiff has not moved for summary judgment regarding the amount of damages. Summary judgment may be rendered on the issue of liability alone, even when there is a genuine issue as to the amount of damages. Rule 56(c), Fed.R.Civ.P.

4. Plaintiff takes great pains to characterize the PAK 2000 forms as "purchase and sales contracts" which evidence the parties' "full and final agreement". *See* Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment at 7. Such a characterization would pre-

Revised Statutes Annotated ("RSA") 382–A:2–207.[5] However, even a material alteration will be included in the agreement if it is "expressly agreed to." *Id.* at comment 3. Although the New Hampshire Supreme Court has not specifically addressed the issue, it is a well-settled principle of law that, in the absence of fraud, misrepresentation, or deceit, a party "expressly agrees" to terms in a contract by signing that contract, even if the party did not read the terms. *N & D Fashions v. DHJ Industries,* 548 F.2d 722, 727 (8th Cir.1976) (citing 17 C.J.S. *Contracts* § 137 (1963)).

In the instant case, Ms. Hickman purportedly signed the PAK 2000 forms, which stated next to her signature that the buyer agreed to the conditions on the back of the form. Thus, even if § K constitutes a material alteration, it was "expressly agreed to". *See, e.g., id.; Southeastern Enameling Corp. v. General Bronze Corp.,* 434 F.2d 330 (5th Cir.1970); *see also Quinn, supra,* at 2–207[A][9] (Cum.Supp. No. 2, 1986). Disney has not alleged any fraud, misrepresentation, or deceit by Ocor. Thus, § K constitutes part of the agreement between the parties even if Ms. Hickman was not aware of the § K provision, as long as she had authority to enter into such an agreement.

Plaintiff argues that Ms. Hickman had implied actual authority or apparent authority to sign the form. Although the issue of whether an agent has actual or apparent authority is one for the trier of fact, *Cohen v. Frank Developers,* 118 N.H. 512, 517, 389 A.2d 933, 936 (1978), if there is no genuine issue as to any material fact, the Court may make the determination as a matter of law.

"The doctrine of implied actual authority focuses on the *agent's* understanding of his or her authority: whether the agent reasonably believed, because of conduct of the principal (including acquiescence) communicated directly or indirectly to him, that the principal desired him to so act." *Sinclair v. Town of Bow,* 125 N.H. 388, 393, 480 A.2d 173, 177 (1984) (citing *Lewis v. Washington Metro Area Transit Auth.,* 463 A.2d 666, 670 n. 7 (D.C.App.1983) (emphasis in original)). The critical question is whether the agent believes she had authority to act as she did. *Id.* 125 N.H. at 394, 480 A.2d 173.

In this case, there is no dispute that Ms. Hickman believed she had the authority to sign the PAK 2000 documents. Hickman Deposition at 7. In her deposition, she stated, "Part of my duties would have been to sign—if the vendor requested that we acknowledge on their form and confirm the order and requested that we signed it, I would have seen fit as my responsibility to do it." *Id.* at 28. Ms. Hickman also stated that she had signed confirmations from other vendors and that no one at Disney told her she should not sign them. *Id.*

Defendant argues, however, that although Ms. Hickman believed she had the authority to sign the PAK 2000 documents, she believed only that she had the authority to sign a *confirmation,* not to enter into a new agreement with different terms. Ms. Hickman's belief regarding her authority to agree to different contractual terms is the critical issue in determining whether she had inherent actual authority to so bind the principal. Ms. Hickman stated that she always obtained a superior's co-signature when she ordered merchandise, *id.* at 21–

sumably take the analysis outside the bounds of UCC § 2–207. However, there is no dispute that Disney's original merchandise order, with different terms and conditions, was sent to Ocor on December 20, 1983, and was received by Ocor on January 3, 1984, and that the first PAK 2000 form was sent to Disney on the same date, January 3, 1984. This exchange of forms brings the analysis under UCC § 2–207 to determine the terms of the parties' agreement. *See generally,* T. Quinn, *Uniform Commercial Code—Commentary and Digest* [hereinafter *Quinn* ] (1978) at 2–71 to 2–79.

**5.** The New Hampshire version of the Uniform Commercial Code applies, absent agreement of the parties to the contrary, when the goods are to be delivered, shipped, or received in New Hampshire. RSA 382–A:1–105, New Hampshire comments; *Cove-Craft Indus. v. B.L. Armstrong,* 120 N.H. 195, 199, 412 A.2d 1028, 1030 (1980). Because the Ocor bags were shipped from New Hampshire, the Court utilizes New Hampshire law in its consideration of the issues.

22, and defendant has presented exhibits in which Disney merchandise orders which changed the terms of an order were signed by Ms. Hickman and a supervisor, *see, e.g.,* Huff Affidavit, Exhibits H, I. Therefore, there is a genuine issue of material fact which must be considered by a jury as to whether Ms. Hickman believed she had the authority to enter into an agreement which changed the terms of her employer's order.

Similarly, whether Ms. Hickman had apparent authority to sign the confirmation is also a disputed issue of fact. *Cohen, supra,* 118 N.H. at 517, 389 A.2d at 936. The test of apparent authority is whether a reasonably prudent person in Ocor's position would believe from Disney's method of conducting business that Ms. Hickman had the authority to sign the PAK 2000 document, agreeing to different terms. *Belleau v. Hopewell,* 120 N.H. 46, 51, 411 A.2d 456, 459 (1980). Ocor argues that it reasonably believed that Ms. Hickman had authority as an assistant buyer to sign the PAK 2000 documents and therefore bind Disney to the § K provision. Defendant, on the other hand, asserts that Disney's method of changing the terms and conditions of a merchandise order was to issue a new merchandise order with the new terms, which was signed by a buyer and a manager. *See, e.g.,* Huff Affidavit Exhibits H and I. Ocor counters Disney's assertion by submitting a Disney order signed solely by a buyer. Plaintiff's Objection, Exhibit 2. This conflicting evidence demonstrates the existence of a dispute regarding what a reasonable person would believe about Ms. Hickman's authority. Thus, the issue presents a jury question, and the Court cannot say as a matter of law that Disney is bound by § K. Therefore, plaintiff's motion for partial summary judgment is denied.

■ In Disney's motion for summary judgment, Disney claims that even if it is bound by § K, the PAK 2000 document was executed in January 1984, and Disney did not breach the provision because it sent the Ocor sample bag to the foreign manufacturer prior to that date. However, § K did not just prohibit Ocor's customers from "remitting" the design to a third party, but it also prohibited "reproduction" or "use" of the design. Bryant Deposition, Exhibit 4.

Plaintiff has introduced a series of telexes between Disney, Canasa, and Kutex which show that subsequent to January 1984 Disney, through Canasa, received a proof of the replacement bag and informed the manufacturer to be sure the tooling for the handle was for a stronger and heavier handle similar to the original sample. *Id.,* Exhibit 18. Disney was also informed that samples were ready for review on June 18, 1984, *id.,* Exhibit 19, and that a final bag was completed on August 1, 1984, *id.,* Exhibit 21. The Hong Kong manufacturer began processing the first Disney order of the bags on August 10, 1984. *Id.,* Exhibit 23. Thus, the Court cannot say as a matter of law that Disney did not violate the § K provision because it might be established at trial that the Ocor bag design was "reproduced" and "used" subsequent to January 1984.

■ Disney also argues that § K does not apply to the Ocor bag in question because the first sentence of § K states that "all designs ... submitted ... to the customer ... remain the exclusive property of PAK 2000." Disney asserts that the Ocor bag is not covered by this provision because the Ocor bag design was not the property of Ocor, but of Decomatic, S.A.

The proper interpretation of a contract is a question of law. *Catamount Const., Inc. v. Town of Milford,* 121 N.H. 781, 782, 435 A.2d 123, 124 (1981). The Court must give the words and phrases used by the parties their common meaning—the meaning a reasonable person would give them. *Id.* (citing *Murphy v. Doll–Mar, Inc.,* 120 N.H. 610, 611–12, 419 A.2d 1106, 1108 (1980)).

The Court finds that § K applies to the Ocor bag. The phrase Disney focuses on is not the critical phrase of § K. It is the second sentence which is at issue, which states: "It is prohibited to reproduce, use or remit to third parties such designs, artwork, etc., without express written consent." The words "such design" refer

back to the previous sentence, which means "all designs submitted to the customer". Since the Ocor bag in question was submitted to Disney, it is included in § K. Additionally, Ocor was the exclusive United States manufacturer of the Model Oscar bag; thus, as between Ocor and Disney, the bag design belonged exclusively to Ocor. Therefore, § K applies to the Model Oscar bag, and defendant's motion for summary judgment must be denied.

■ Disney also moves for summary judgment on the Count II unjust enrichment claim, stating that as a matter of law it has not retained benefits unjustly. In contradiction, Ocor argues that Disney has been unjustly enriched by $114,945, which it alleges is the difference between the cost of the Ocor bag and the cost of the Hong Kong-manufactured bag times the number of Hong Kong bags purchased, or, in the alternative, by $91,466, Ocor's alleged lost profits.

Unjust enrichment is an equitable doctrine which allows recovery when it would be unconscionable for a defendant to retain a benefit wrongfully obtained. *R. Zoppo v. City of Manchester*, 122 N.H. 1109, 1113, 453 A.2d 1311, 1314 (1982). A plaintiff is entitled to restitution if he establishes that a defendant was unjustly enriched, either through a wrongful act or by passively accepting a benefit that would be unconscionable to retain. *Id.* (citing *Cohen, supra*, 118 N.H. at 518, 389 A.2d at 937). A defendant may be unjustly enriched, even if the plaintiff has not suffered a corresponding loss. Restatement of Restitution § 1, comment e (1937); *cf. Zoppo, supra*, 122 N.H. at 1113, 453 A.2d at 1314.

Disney argues that because it was under no contractual obligation to purchase additional Ocor bags, any financial benefit it received from buying replacement bags at a lower price was a benefit which rightfully inured to Disney. This argument misses the essence of the unjust enrichment claim. If Ocor can establish that Disney wrongfully "copied" the Ocor bag design (i.e., in violation of § K), and consequently was able to obtain a bag of the same design for less cost than it would have had to pay to purchase the Ocor bag, then Disney obtained a financial benefit wrongfully and was unjustly enriched, even if Ocor did not suffer a corresponding loss in sales to Disney. Disney therefore has not established as a matter of law that it was not unjustly enriched, and its cross-motion for summary judgment on the unjust enrichment claim (Count II) must be denied.

In summary, plaintiff's motion for partial summary judgment (document no. 15) and defendant's cross-motion for summary judgment (document no. 19) are denied because genuine issues of material fact exist. Defendant's cross-motion (document no. 19) for summary judgment on the Count II unjust enrichment claim is also denied.

SO ORDERED.